939 F.2d 610
 56 Empl. Prac. Dec. P 40,867, 33 Fed. R. Evid.
Serv. 877
Langston BRADLEY, Appellant,
Equal Employment Opportunity Commission (Intervenor Below),
v.
PIZZACO OF NEBRASKA, INC. d/b/a Domino's Pizza, and Domino's
Pizza, Inc., Appellees.
Langston BRADLEY, Equal Employment Opportunity Commission
(Intervenor Below), Appellant,
v.
PIZZACO OF NEBRASKA, INC. d/b/a Domino's Pizza, and Domino's
Pizza, Inc., Appellees.
 Nos. 89-2271NE, 89-2272NE.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 13, 1990.
Decided July 25, 1991.
 
 Robert Broom, Omaha, Neb., and Samuel Marcosson, Washington, D.C., argued (Mary Clarkson, Omaha, Neb., on brief), for appellant.
 Soren Jensen, argued (J. Russell Derr, on the brief), Omaha, Neb., for appellee.
 Before FAGG, WOLLMAN and MAGILL, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 Langston Bradley brought this disparate impact case against Domino's Pizza, Inc. and Pizzaco of Nebraska, Inc. (collectively Domino's) claiming his discharge for failure to comply with Domino's no-beard policy violates Title VII because the policy discriminates against black males. See 42 U.S.C. Sec. 2000e-2(a) (1988). The Equal Employment Opportunity Commission (EEOC) intervened on behalf of Bradley and other black males adversely affected by Domino's no-beard policy. See 42 U.S.C. Sec. 2000e-4(g)(6). The EEOC seeks an injunction requiring Domino's to recognize an exception to the policy for black men who medically are unable to shave, but does not dispute that Domino's is otherwise free to enforce its policy. The district court concluded "the EEOC ... failed to establish [Domino's policy has] a disparate impact on black males" and dismissed its complaint. The district court also found Bradley could comply with Domino's no-beard policy and dismissed his complaint. The EEOC and Bradley appeal. We reverse in part, affirm in part, and remand for further proceedings.
 
 
 2
 The controlling facts are not complicated. Domino's grooming policy prohibits company employees from wearing beards. Pizzaco, a Domino's franchisee, hired Bradley to deliver pizzas, but fired him within two weeks because he would not remove his beard. Bradley is a black man who suffers from pseudofolliculitis barbae (PFB), a skin disorder affecting almost half of all black males. The symptoms of PFB--skin irritation and scarring--are brought on by shaving, and in severe cases PFB sufferers must abstain from shaving altogether. Domino's policy, however, provides for no exceptions. As Pizzaco's owner explained, "[Y]ou must be clean-shaven to work for Domino's." Although Bradley contended otherwise, the district court found he could shave without complications.
 
 
 3
 This case, then, is about a facially neutral employment policy that discriminates against black males when applied. Title VII forbids employment policies with a disparate impact unless the policy is justified by legitimate employment goals. Griggs v. Duke Power Co., 401 U.S. 424, 429-31, 91 S.Ct. 849, 852-54, 28 L.Ed.2d 158 (1971). To make a prima facie case of disparate impact, the EEOC must identify a specific employment practice that has a significantly disparate impact on black males. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656-58, 109 S.Ct. 2115, 2124-25, 104 L.Ed.2d 733 (1989). The EEOC contends the district court committed error in holding the EEOC failed to satisfy these requirements. We agree. Through expert medical testimony and studies, the EEOC demonstrated Domino's policy necessarily excludes black males from the company's work force at a substantially higher rate than white males. In so doing, the EEOC has shown Domino's facially neutral grooming requirement operates as a "built-in headwind" for black males. Griggs, 401 U.S. at 432, 91 S.Ct. at 854.
 
 
 4
 The record shows PFB almost exclusively affects black males and white males rarely suffer from PFB or comparable skin disorders that may prevent a man from appearing clean-shaven. Dermatologists for both sides testified that as many as forty-five percent of black males have PFB. The EEOC's dermatologist offered his opinion that approximately twenty-five percent of all black males cannot shave because of PFB. The district court, however, rejected the offer of this opinion on the ground the dermatologist was not qualified to testify about PFB's impact on the black male population's ability to shave. The district court committed error. When the disparity under attack has its roots in a medical condition peculiar to a protected racial group, the disqualifying racial condition and its prevalence may be established by expert medical testimony. The record and the dermatologist's resume show he has extensive experience in the field of dermatology, and has conducted studies, written articles, and lectured on the topic of PFB. By holding this medical expert could not testify about the prevalence of a medical condition within his area of expertise, despite his wealth of relevant training, study, and experience, the district court clearly abused its discretion. See Fox v. Dannenberg, 906 F.2d 1253, 1256-57 (8th Cir.1990). Thus, this expert's opinion must be considered as part of the EEOC's prima facie case.
 
 
 5
 The EEOC's dermatologist also described results from military studies that were in keeping with his opinion that significant numbers of black males with PFB cannot shave. These military studies showed that upwards of fifty percent of black males who shave have PFB and of those twenty percent could not shave. The district court, believing the number of black males in the military studies was too small for a statistical analysis, refused to consider the studies' results. The EEOC's case, however, rests on medical rather than statistical evidence. The dermatologists for the EEOC and Domino's made clear the medical significance of the military samplings: PFB study results drawn from small military samplings of black men are representative of PFB's prevalence in, and impact on, the general black male population.
 
 
 6
 In our view, the EEOC was entitled to rely on the military studies and the opinions of the dermatologists equating the studies' results to the black male population to establish a prima facie case of disparate impact. This is particularly true because the disqualifying racial condition affects the black males without regard to geographical, cultural, educational, or socioeconomic considerations. See Dothard v. Rawlinson, 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977) (reliance on general population data is not misplaced when there is no reason to believe the disqualifying racial characteristic of the sampled group differs markedly from the group's counterpart in the national population). If Domino's believed the military studies' results were skewed, or disagreed with the dermatologists' views that the results of military studies of PFB mirror the black male population as a whole, it was "free to adduce countervailing evidence of [its] own." Id. at 331, 97 S.Ct. at 2727-28. Domino's did not do so. "We will not second-guess the significance of a small sample size where [the employer] has failed to present any evidence of its lack of reliability." McAlester v. United Air Lines, 851 F.2d 1249, 1258 (10th Cir.1988).
 
 
 7
 The district court also held the EEOC failed to establish a prima facie case of disparate impact because it did not produce statistical evidence comparing "the racial composition of [Domino's] labor market [with] the racial composition of [Domino's work force]." Disparate impact claims under Title VII, however, do not require a showing of racial disparity at the bottom line of the employer's work force. Connecticut v. Teal, 457 U.S. 440, 450-51, 102 S.Ct. 2525, 2532-33, 73 L.Ed.2d 130 (1982). Contrary to the district court's view, a case can be made under Title VII by proving a specific hiring practice has a disparate impact, "notwithstanding the bottom-line racial balance in [the employer's] workforce." Wards Cove, 490 U.S. at 653 n. 8, 109 S.Ct. at 2123 n. 8.
 
 
 8
 Nevertheless, Domino's contends we must affirm the district court because the EEOC failed to show black males with PFB who could not shave were turned away or were fired for failing to comply with Domino's no-beard policy. We disagree. There is no requirement that disparate impact claims must always include evidence that actual job applicants were turned down for employment because of the challenged discriminatory policy. Dothard, 433 U.S. at 330, 97 S.Ct. at 2727. The reason is self-evident: a discriminatory work policy might distort the job applicant pool by discouraging otherwise qualified workers from applying. Id. Thus, a prima facie case can be made on general population figures when the data "conspicuously demonstrates [the] job requirement's grossly discriminatory impact." Id. at 331, 97 S.Ct. at 2727; see also Wards Cove, 490 U.S. at 651 n. 6, 109 S.Ct. at 2121 n. 6.
 
 
 9
 The EEOC's evidence makes clear that Domino's strictly-enforced no-beard policy has a discriminatory impact on black males. PFB prevents a sizable segment of the black male population from appearing clean-shaven, but does not similarly affect white males. Domino's policy--which makes no exceptions for black males who medically are unable to shave because of a skin disorder peculiar to their race--effectively operates to exclude these black males from employment with Domino's. Thus, having concluded the EEOC has shown Domino's grooming policy falls more harshly on blacks than it does on whites, we must reverse the district court's holding that the EEOC failed to make a prima facie showing of disparate impact.
 
 
 10
 For his part, Bradley contends the district court's finding that he can shave is clearly erroneous. We cannot agree. The testimony was contradictory about the severity of Bradley's PFB and his ability to shave. Nevertheless, the record shows that almost half of the black males with PFB can shave, that Bradley has a mild case of PFB, and that at his next job, Bradley always appeared clean-shaven. Based on this record, we cannot say the district court's finding is clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
 
 
 11
 Bradley also contends he is disabled under the Nebraska Fair Employment Practice Act. See Neb.Rev.Stat. Secs. 48-1101 to -1126 (1988 & Supp.1990). The district court decided Bradley is not disabled by his PFB condition under the terms of the Nebraska statute. See id. Sec. 48-1102(8). Having reviewed de novo the district court's interpretation of this state law question, Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we conclude the district court properly held Bradley is not disabled under the Nebraska statute.
 
 
 12
 Accordingly, we reverse in part, affirm in part, and remand to the district court to proceed with the business justification stage of this disparate impact case. See Wards Cove, 490 U.S. at 658-61, 109 S.Ct. at 2125-27.