14-3636 (L)
*Legg et al. v. Ulster County et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2015

No. 14-3636 (L), No. 14-3638 (XAP), and No. 14-4635 (CON)

ANN MARIE LEGG,
*Plaintiff-Appellant*,

and

PATRICIA WATSON,
*Plaintiff-Cross-Appellee*,

*v.*

ULSTER COUNTY and PAUL J. VANBLARCUM, in his official capacity as
Sheriff of the County of Ulster and individually,
*Defendants-Appellees-Cross-Appellants.*[1]

————

Appeals from the United States District Court
for the Northern District of New York.
No. 09 Civ. 550 (FJS) — Frederick J. Scullin, *Judge*.

————

Argued: October 8, 2015
Decided: April 26, 2016

————

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

Before: PARKER, LYNCH, and CARNEY, *Circuit Judges*.

_____

Appeals from a judgment and post-judgment orders of the United States District Court for the Northern District of New York (Scullin, *J.*).  At the close of her direct case, the court dismissed plaintiff-appellant Ann Marie Legg's claim for pregnancy discrimination.  The court also denied for want of jurisdiction defendants-appellees-cross-appellants Ulster County and Paul VanBlarcum's post-trial motions pursuant to Rule 50(b) and 59(b) on plaintiff-appellee Patricia Watson's claim of a hostile work environment.  We conclude that under *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), decided after this appeal was filed, Legg has presented sufficient evidence to support a claim of pregnancy discrimination and therefore VACATE the judgment in part and REMAND with instructions to conduct a new trial.  We also conclude that the district court erred in denying the defendants' post-trial motions for want of jurisdiction and accordingly VACATE the post-judgment orders and REMAND for further proceedings consistent with this opinion.

_____

> STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, New York; Brendan Klaproth, Klaproth Law PLLC, Washington, D.C.; and Joseph Ranni, Ranni Law Offices, Florida, New York, *for Plaintiff-Appellant and Plaintiff-Cross Appellee.*
>
> MATTHEW J. KELLY (Amanda Davis Twinam, *on the brief*), Roemer Wallens Gold & Mineaux LLP, Albany, New York, *for Defendants-Appellees-Cross-Appellants.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

Ann Marie Legg, a corrections officer at the Ulster County Jail, appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) dismissing her claim against Ulster County and former Sheriff Paul VanBlarcum for pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"). Legg claims that the County unlawfully discriminated against her on the basis of her pregnancy when it denied her request for an accommodation under its light duty policy, pursuant to which only employees injured on the job were eligible for light duty assignments. The district court granted the defendants' motion for judgment as a matter of law at the close of Legg's direct case, reasoning that the policy could not be discriminatory because it was facially neutral with respect to pregnancy.

While this appeal was pending, the Supreme Court decided *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015). *Young* held that an employer's facially neutral accommodation policy gives rise to an inference of pregnancy discrimination if it imposes a significant burden on pregnant employees that is not justified by the employer's non-discriminatory explanation. We conclude that Legg has presented sufficient evidence to support a pregnancy discrimination claim under *Young* and therefore vacate the judgment in part and remand with instructions to conduct a new trial.

The defendants appeal from post-judgment orders denying their motions for judgment as a matter of law or, alternatively, for a new trial on Patricia Watson's claim of a sex-based hostile work environment. The district court, without objection, initially granted the defendants an extension of time to file their post-trial motions. However, after the motions were filed, the court denied them for want of jurisdiction, believing that it had lacked authority under

Federal Rule of Civil Procedure 6(b)(2) to grant an extension and that the time limitations are jurisdictional. We conclude that the district court erred in denying the motions for want of jurisdiction and that, although it lacked authority under Rule 6(b)(2) to grant an extension, it had discretion to consider whether the plaintiffs waived compliance with the rule or whether an equitable exception applied. Accordingly, we vacate the post-judgment orders and remand for further proceedings consistent with this opinion.

## BACKGROUND

Legg began working as a corrections officer for the Ulster County Jail in 1996. At the time, the County maintained a policy under which employees injured on the job were eligible for light duty assignments, defined as clerical and other duties that would not aggravate the employee's condition. Under Sheriff VanBlarcum's implementation, the policy did not apply to pregnant employees because their condition did not result from a line-of-duty injury. Consequently, pregnant employees' only options were to continue working full duty, use accrued sick, vacation, or personal time, or take Family and Medical Leave Act or disability leave.

After a number of pregnancy-related complications, Legg became pregnant in 2008. Because the pregnancy was high risk, her doctor recommended that she work light duty and provided a note, on July 8, stating that she was "able to work at this time but shouldn't have direct contact with inmates." Joint App'x at 923. VanBlarcum directed Undersheriff Frank Faluotico to deny her request to accommodate her doctor's recommendation. On July 10, Faluotico informed Legg that "[e]mployees are afforded light duty assignments at the Sheriff's discretion for work-related injuries/illnesses only," and she therefore had "the option of being re-evaluated by [her] attending physician and returning to work full duty capacity as a Correction Officer or [to] utilize accrued time (sick, vacation, personal) and file for [New York State] Disability

4

benefits." *Id.* at 925. Faluotico requested that Legg notify him of her response as soon as possible.

Later that day, Legg received a call from Lieutenant Jon Becker, who said that he would take care of her by assigning her to light duty positions if she obtained a revised doctor's note stating that she was able to work. Legg submitted a new note that day indicating that she was "able to work with no restrictions." *Id.* at 924.

For a time, Legg was assigned to light duty tasks as promised. By August, however, she was gradually required to work with inmates again. While working in a cell block in November, by then approximately seven months pregnant, Legg came upon two inmates fighting in the bathroom and was bumped as one ran past her. As a result of this incident, she left work and did not return until after she gave birth.

After Legg returned to work, she brought this action against the County and several of its officials, including VanBlarcum, alleging that the denial of her request for an accommodation amounted to pregnancy discrimination in violation of Title VII. Legg, Watson, and two other female corrections officers also asserted claims for, among other things, a sex-based hostile work environment in violation of Title VII and 42 U.S.C. § 1983.

The suit proceeded to trial and, at the close of Legg's direct case, the defendants moved for judgment as a matter of law pursuant to Rule 50 on the ground that all employees who had "outside line-of-duty disabilities" were treated the same under the light duty policy. Joint App'x at 674. The district court granted the motion, explaining that in requiring that the injury arise when the employee is on duty, the policy "applied across the board to everyone," "[a]nd when the policy applies across the board to everybody, there's no discrimination." *Id.* at 675–76. The remaining

claims were submitted to the jury, which returned a verdict in Watson's favor on her hostile work environment claim but in the defendants' favor otherwise.

After the jury was excused, the defendants indicated that they intended to file post-trial motions and the district court, without objection from the plaintiffs, set a deadline of two weeks from the date that the defendants received the transcript. On August 20, 2014, the court entered final judgment, and on November 5, less than two weeks after receiving the transcript, the defendants filed their post-trial motions for judgment as a matter of law under Rule 50(b) and, alternatively, for a new trial under Rule 59(b). The next day, the district court denied the motions as untimely, concluding that although the defendants had been granted an extension, they were nonetheless required to file their Rule 50(b) and Rule 59(b) motions no later than 28 days after the entry of judgment, and under Rule 6(b)(2) these deadlines were jurisdictional. The same day, the court denied the defendants' Rule 60 motion for reconsideration for essentially the same reason. Legg timely appealed from the judgment. The defendants cross-appealed and also appealed from the district court's November 6 orders denying their post-trial motions.

## DISCUSSION

### I.

We begin with the dismissal of Legg's pregnancy discrimination claim. Rule 50 allows a district court to grant a motion for judgment as a matter of law in favor of the defendant if, at the close of the plaintiff's case, a reasonable jury would not have a legally sufficient basis to find for the plaintiff on an issue essential to her claim. Fed. R. Civ. P. 50(a)(1)(B). We review the district court's decision *de novo*, drawing all reasonable inferences in the non-movant's favor and disregarding any evidence favorable to the movant that the jury is not required to believe because it is

contradicted or impeached.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## A.

Title VII prohibits discrimination with respect to the terms, conditions, or privileges of employment because of a person's sex. 42 U.S.C. § 2000e-2(a)(1).  In 1978, Congress passed the PDA, which expressly overruled the Supreme Court's holding in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), that pregnancy discrimination is not sex discrimination.  The PDA accomplished this by adding the following to Title VII's definitional section:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.

Pub. L. 95-555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k)); *see  Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 670–71 & n.1 (1983).  This provision "makes clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions."  *Newport News*, 462 U.S. at 684.

Like other Title VII discrimination claims, pregnancy discrimination may be proven under a disparate treatment or disparate impact theory of liability.  *Young*, 135 S. Ct. at 1345.  To establish disparate treatment, a plaintiff must show that the defendant's actions were motivated by a discriminatory intent, either through direct evidence of intent or by utilizing the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995).  Alternatively, a plaintiff may proceed on a disparate impact theory by showing that even if a policy or practice

is facially neutral or is not motivated by a discriminatory intent, it has a discriminatory effect. *Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009).

During the pendency of this appeal, the Supreme Court decided *Young v. United Parcel Service, Inc.* to resolve how the PDA's "same treatment" clause applies to pregnancy discrimination claims brought under a disparate treatment theory of liability. The circumstances of *Young* are similar to those presented here. Young, a UPS mail carrier responsible for delivering packages weighing up to seventy pounds, became pregnant and was told by her doctor that she should not lift more than twenty pounds. UPS refused to accommodate her, however, even though it provided accommodations to employees who were injured on the job, had lost their Department of Transportation certification, or suffered from a disability covered by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* 135 S. Ct. at 1344.

Young sued for pregnancy discrimination, claiming that UPS had a "light-duty-for-injury" policy that excluded pregnant employees while covering numerous "other persons" who were similar in their ability or inability to work. *Id.* at 1347. The District Court granted UPS summary judgment and the Fourth Circuit affirmed, reasoning that Young was "different from those 'injured on the job because, quite simply, her inability to work did not arise from an on-the-job injury.'" *Id.* at 1347–48 (quoting 707 F.3d 437, 450–51 (4th Cir. 2013)).

The Supreme Court reversed. Writing for the majority, Justice Breyer held that an employer violates the PDA when it treats pregnant employees "less favorably" than non-pregnant employees similar in their ability or inability to work to such an extent that it is more likely than not that the disparity is motivated by intentional discrimination. *Id.* at 1344. To facilitate this inquiry, the Court established a modified *McDonnell Douglas* analysis which focuses on

8

"whether the nature of the employer's policy and the way in which it burdens pregnant women shows that the employer has engaged in intentional discrimination." *Id.*

First, as with any other discrimination claim, the plaintiff must establish a *prima facie* case by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *Id.* at 1354 (internal quotation marks omitted). This burden is "not onerous" and requires the plaintiff to show only (i) "that she belongs to the protected class," (ii) "that she sought accommodation," (iii) "that the employer did not accommodate her," and (iv) "that the employer did accommodate others 'similar in their ability or inability to work.'" *Id.*

If the plaintiff satisfies her initial burden, a presumption of discriminatory intent arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action. *See id.*; *Quaratino*, 71 F.3d at 64. But "consistent with the Act's basic objective, that reason normally cannot consist simply of a claim that it is more expensive or less convenient to add pregnant women to the category of those ('similar in their ability or inability to work') whom the employer accommodates." *Young*, 135 S. Ct. at 1354; *see also Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1084 n.14 (1983) (Marshall, *J.*, concurring in the judgment) (recognizing that Congress's passage of the PDA indicates that the greater cost of providing benefits for a protected class cannot justify differential treatment based upon the protected trait).

If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination. *See Young*,

135 S. Ct. at 1354. The plaintiff may rebut the justification through circumstantial proof of discriminatory intent. In the pregnancy discrimination context in particular, *Young* recognized that a plaintiff can make this showing by presenting "sufficient evidence that the employer's policies impose a *significant burden* on pregnant workers, and that the employer's legitimate, nondiscriminatory reasons are not *sufficiently strong* to justify the burden, but rather – when considered alongside the burden imposed – give rise to an inference of intentional discrimination." *Id.* (emphases added) (internal quotation marks omitted). *Young* went on to explain that a plaintiff may create a genuine issue of fact as to the existence of a significant burden by showing "that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id.* Young, for instance, could do so by demonstrating that UPS accommodated most non-pregnant employees with lifting limitations "while categorically failing to accommodate pregnant employees with lifting limitations." *Id.* To establish that UPS's reasons were not sufficiently strong, she could point to the fact that UPS had multiple policies to accommodate non-pregnant employees. *Id.* at 1354–55. "That is, why, when the employer accommodated so many, could it not accommodate pregnant women as well?" *Id.* at 1355.

**B.**

Legg argues to us that she presented sufficient evidence to support a discrimination claim under either *Young*'s disparate treatment framework or a disparate impact analysis. We agree that Legg has adduced sufficient evidence for a jury to have considered whether the County's policy was motivated by a discriminatory intent. Consequently, we do not reach her disparate impact arguments.

As an initial matter, we do not believe that Legg has presented direct evidence of discriminatory intent. Although she contends that

the County's policy is itself direct evidence because it excluded pregnant women, the policy did so on a facially neutral basis – the source of one's inability to work – making it impossible to conclude, without inferring, that the distinction was based upon an intent to discriminate against pregnant employees. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183–85 (2d Cir. 1992); *see also Young*, 135 S. Ct. at 1354 (direct evidence is "a workplace policy, practice, or decision [that] relies expressly on a protected characteristic"). This conclusion is apparent to us from *Young*. Were Legg correct, the burden-shifting framework would have been unnecessary because UPS's policy would have amounted to direct evidence of UPS's alleged discriminatory intent.

Legg has, however, established a *prima facie* case of discrimination under *Young*. She sought a light duty accommodation while pregnant. The County did not accommodate her. And, as a matter of policy, the County provided light duty accommodations to other employees who were similar in their ability or inability to work, namely, those who were unable to perform non-light-duty tasks as a result of injuries incurred on-duty. These facts are enough, if left unexplained, for a reasonable jury to conclude that it is more likely than not that the policy was motivated by a discriminatory intent.

The defendants claim that they had a legitimate, non-discriminatory reason for the distinction because New York General Municipal Law § 207–c(1) requires municipalities to continue to pay corrections officers injured on the job but does not require the same for employees who become unable to work for other reasons. We agree that compliance with a state workers' compensation scheme is a neutral reason for providing benefits to employees injured on the job but not pregnant employees. UPS offered the same justification for its policy in *Young*, *see* 135 S. Ct. at 1360 (Alito, *J.*, concurring) (citing Md. Lab. & Empl. Code Ann. § 9–614 (2008)), and the majority implicitly determined that this was a legitimate, non-

11

discriminatory reason for the distinction, remanding for consideration of whether Young had raised a genuine issue of material fact as to pretext, *see id.* at 1355–56. So too, here, once the County represented that its policy was based upon a workers' compensation scheme, the burden of production shifted back to Legg to show by a preponderance of the evidence that this justification was a pretext for intentional discrimination. For several reasons, we believe that a reasonable jury could find that Legg carried her burden.

First, even before *Young*, a plaintiff could establish pretext and intentional discrimination by pointing out significant inconsistencies in the employer's justification. *See, e.g., Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). At trial, the defendants presented several different justifications for declining to extend light duty accommodations to pregnant employees and for denying Legg's request. While VanBlarcum testified that he limited light duty accommodations to employees injured on the job because he wanted to "encourage everybody to build up sick time" and did not "believe" in providing light duty accommodations to employees who were injured off the job, Joint App'x at 520, Faluotico testified that VanBlarcum made the determination as to Legg "for her safety, not only her but her unborn child, in the facility," *id.* at 349. VanBlarcum also conceded on cross-examination that it would be more costly to provide light duty accommodations to pregnant employees. And although the defendants now claim that the policy was based upon compliance with state law, the only testimony in the record on this point was VanBlarcum's explanation of the meaning of abbreviations listed in the minutes from a sergeant's meeting, and he simply noted that "207-c is a section of law that allows people that get hurt on duty to be out and still receive pay." *Id.* at 459. Neither VanBlarcum, nor anyone else, ever testified that this was his

reason for denying accommodations to pregnant employees.[2]  Under these circumstances, a reasonable jury drawing all reasonable inferences in Legg's favor could find that the defendants' current explanation – compliance with state law – is pretextual, and the real reason for the distinction was unlawful discrimination.

Second, Legg has offered sufficient evidence to proceed to trial under the framework articulated in *Young*.  A reasonable jury could conclude that the defendants imposed a significant burden on pregnant employees because, like UPS, the County categorically denied light duty accommodations to pregnant women.  Indeed, the defendants represent that of 176 corrections officers during VanBlarcum's tenure, just one – Legg – was pregnant, and she was denied an accommodation.  Defs.' Opp'n Br. at 27.  VanBlarcum also testified that another employee came to him "stating she wanted to get pregnant and wanted to know if [he] would allow light-duty employment."  Joint App'x at 528.  He advised the employee that she would not be accommodated.  *Id.*  Although it is unclear from the record whether the County accommodated a large percentage of non-pregnant employees in practice, they at least were eligible.  By contrast, as one would expect, the County failed to accommodate 100% of its pregnant employees.  This disparity counsels in favor of a finding that the policy imposed a significant burden on pregnant employees.  *See Young*, 135 S. Ct. at 1354.

The defendants perplexingly suggest that these figures show that pregnant employees were not significantly burdened because "only one of 176 COs were affected by this policy." Defs.' Opp'n Br. at 27.  But under *Young*, the focus is on how many pregnant employees were denied accommodations in relation to the total number of pregnant employees, not how many were denied

---

[2] We doubt that this testimony would permit a reasonable jury to conclude, without speculating, that the defendants even offered G.M.L. § 207-c as a neutral justification for denying accommodations to pregnant employees.  However, because the defendants clearly offered other justifications, we assume *arguendo* that this testimony was adequate.

accommodations in relation to *all* employees, pregnant or not. The reason is simple enough; this comparison better reveals whether or not there is a burden on pregnant employees. If an employer has fifty pregnant employees and only five are adversely affected by its policy, it will be more difficult to draw an inference of a significant burden because many pregnant employees are able to or have taken advantage of the accommodation, providing less reason to believe that the policy is motivated by animus against pregnant employees. On the other hand, if an employer has just one pregnant employee and she has been adversely affected, then it has undoubtedly imposed a significant burden on its pregnant employees – it has burdened the only one it has. Contrary to the defendants' implication, an employer cannot justify pregnancy discrimination by relying upon the fact that pregnant employees constitute an insignificant part of its workforce.

The defendants also argue that Legg did not suffer a significant burden because she was able to perform her ordinary job duties and simply "decided to stop working until after she gave birth." *Id.* at 26. While that is one view of the evidence, a reasonable jury drawing all reasonable inferences in Legg's favor could reach a very different result: Faced with the prospect of going without pay during her pregnancy, and having been informally promised an accommodation by Becker, Legg sought a revised doctor's note allowing her to work full duty, which reflected her need to work rather than her ability to do so. She was then gradually required to return to full duty work, and she acquiesced until she suffered a serious health scare and decided to take leave from her job. These circumstances would permit a jury to reasonably conclude that pregnant employees suffered a significant burden. Moreover, regardless of Legg's particular circumstances, we think that when an accommodation policy excludes pregnant employees from coverage and thereby places them at risk of violent confrontations, a reasonable jury could find that the denial itself is evidence of a significant burden.

The defendants finally contend that Legg did not suffer a significant burden because employees who received a light duty accommodation were also burdened in that they were subject to "strict rules," including an inability to leave their homes during their shifts and random home visits to ensure their compliance. *Id.* at 25. We do not doubt that a comparison of the burdens imposed upon employees who receive an accommodation and those who do not may, in appropriate circumstances, undermine an inference that pregnant employees are subjected to a significant burden. We think it obvious, however, that a reasonable jury could conclude that the "burdens" imposed upon accommodated employees in this case do not show that the burden imposed upon Legg and other pregnant corrections officers was insignificant.

A reasonable jury could also conclude that the defendants' reasons were not "sufficiently strong," when considered alongside the burden imposed, to justify the denial of accommodation to pregnant employees. The defendants maintained a light duty policy for employees injured on duty but did not extend that benefit to pregnant employees, who, during VanBlarcum's tenure, amounted to a single corrections officer – Legg. As a result, she was required to continue working with inmates. The defendants rationalize this arrangement on the basis that G.M.L. § 207-c applies only to employees injured on duty. But of course nothing in the statute prevented them from offering the same accommodations to pregnant employees. Under these circumstances, we believe that a reasonable jury could find that compliance with a state law requiring accommodation of certain employees was an insufficient reason for denying accommodation to pregnant employees.

Moreover, although the defendants claim that they were motivated solely by compliance with state law, a reasonable jury could find that cost was a factor, as the defendants lacked the same financial incentive to continue to employ pregnant employees in some capacity and had a countervailing incentive to replace them.

VanBlarcum admitted as much at trial, stating that it would be more costly to provide benefits to pregnant employees because the County would have to "find somebody else to fill [the full duty] position" and "pay them as well." Joint App'x at 521. The defendants all but concede the same on appeal, admitting that "[i]f there is an element of cost associated with the distinction, it is a result of New York State law and policy." Defs.' Opp'n Br. at 30. *Young* expressly cautioned, however, that cost alone is generally not a legitimate basis for refusing to accommodate pregnant employees on the same basis as other employees similar in their ability or inability to work. 135 S. Ct. at 1354. To the extent that the defendants' policy was motivated by cost, a reasonable jury could conclude that their purported justification for denying light duty accommodations to pregnant employees – compliance with state law – is pretextual.

Finally, we emphasize that a jury would not have necessarily been compelled to reach these conclusions and could have returned a verdict in the defendants' favor. As the Supreme Court made clear in *Young*, the PDA does not "grant[] pregnant workers a 'most-favored-nation' status" requiring employers who grant any accommodation to any employee to "provide similar accommodations to all pregnant workers (with comparable physical limitations)," regardless of other considerations. *Id.* at 1349–50 (emphasis removed). Indeed, the Court declined to endorse an Equal Employment Opportunity Commission guideline that construed the PDA to entirely prohibit policies that "provid[e] light duty only to workers injured on the job." *Id.* at 1351. The legality of such policies depends, rather, upon a careful analysis of the facts of a given case.

As we previously noted, a jury may infer a discriminatory intent where the employer "accommodates *a large percentage of nonpregnant workers* while failing to accommodate a large percentage [here, 100%] of pregnant workers." *Id.* at 1354 (emphasis added). But if, for example, the evidence showed that the County

16

accommodated very few injured workers under the light duty policy and that many non-pregnant workers were among those denied accommodation, the jury might reasonably refuse to infer a discriminatory intent. And while the cost of adding pregnant workers to an otherwise expansive program of accommodation cannot justify their exclusion, a policy is not necessarily doomed by the fact that it was partially motivated by cost. After all, if cost were not a factor, employers would have little reason not to accommodate everyone, and the cost of adopting such a policy is presumably always a factor in limiting accommodations to those injured on the job. A policy that requires nearly all workers to use sick leave when injured or ill rather than be accommodated on the job with light duty is not an unreasonable one. Whether it is appropriate to infer a discriminatory intent from the pattern of exceptions in a particular workplace will depend on the inferences that can be drawn from that pattern and the credibility of the employer's purported reasons for adopting them. We simply hold that in this case, based on the evidence presented, Legg was entitled to have these issues decided by a jury.

## II.

We now consider the district court's denial of the defendants' Rule 50(b) and 59(b) motions, as well as its denial of their motion for reconsideration pursuant to Rule 60. Our review of the denial of a Rule 50(b) motion is, as noted, *de novo*. We review the denial of a Rule 59(b) or Rule 60 motion for abuse of discretion. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *Arnold v. Cty. of Nassau*, 252 F.3d 599, 602 (2d Cir. 2001).[3]

---

[3] The defendants appeal the district court's decision on their post-trial motions. Because the notice of appeal of the denial of those motions was filed within the time prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A) and 26(a)(1), the December 8, 2014 notice of appeal was timely to appeal the district court's denial of those motions for lack of jurisdiction, which is the only issue that we decide based on that notice of appeal. *See Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 313 n.6 (2d Cir. 2015); *see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1359 n.15 (11th

This case presents somewhat peculiar circumstances. The district court initially granted the defendants an extension of time to file their motions but later denied the motions as untimely on the ground that it lacked authority to grant an extension and Rule 6(b)(2) renders the 28-day time limitations under Rules 50(b) and 59(b) jurisdictional. The court denied the defendants' motion for reconsideration on the same basis.

We cannot agree. Federal Rule of Civil Procedure 6(b)(2) provides that a district court may, for good cause, extend the time to file a motion but "must not extend the time to act under" Rules 50 or 59. While for many years we described the time limitations in the Federal Rules as "jurisdictional," *see, e.g.*, *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 230 (2d Cir. 2000), the Supreme Court has since clarified the difference between jurisdictional rules and non-jurisdictional, claim-processing rules, *see In re Indu Craft, Inc.*, 749 F.3d 107, 114 (2d Cir. 2014) (discussing Fed. R. App. P. 6(b)(1)). A time limitation is jurisdictional only if it is prescribed by statute. By contrast, procedural rules which have no statutory analogue, although "mandatory" in the sense that a party may insist upon their enforcement, do not affect the power of the courts and are subject to waiver or equitable exception. *Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 311 (2d Cir. 2015). This distinction follows from the fundamental principle that Congress alone has authority to determine a lower federal court's subject matter jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 452–56 (2004).

Although we have yet to address whether Rule 6(b)(2) is jurisdictional, we have little difficulty in concluding – like every other circuit to consider the question – that it is not. *See, e.g.*, *Mobley v. C.I.A.*, 806 F.3d 568, 577 (D.C. Cir. 2015); *Blue v. Int'l Brotherhood of*

---

Cir. 2010) (holding that even though the appellant's post-trial motions were untimely, when it "appealed the district court's order denying the motions within 30 days of the court's entry of the order . . . that appeal was timely" and provided "jurisdiction to review the district court's . . . order as to [the appellant's] post-trial motions").

*Elec. Workers Local Union 159*, 676 F.3d 579, 584–85 (7th Cir. 2012); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1359 n.15 (11th Cir. 2010); *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1142–43 (9th Cir. 2009); *Dill v. Gen. Am. Life Ins. Co.*, 525 F.3d 612, 618–19 (8th Cir. 2008); *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 474 (6th Cir. 2007). Because the Federal Rules of Civil Procedure are promulgated and amended by the Supreme Court pursuant to the Rules Enabling Act, 28 U.S.C. §§ 2071–2077, an individual rule is jurisdictional only if it is codified by statute in language that clearly reflects Congress's intent to treat it as jurisdictional. *See Indu Craft*, 749 F.3d at 114. Rule 6(b)(2) has no such statutory codification. Its language is also virtually identical to that of Federal Rule of Criminal Procedure 45(b) and Bankruptcy Rule 9006(b), which the Supreme Court has held are non-jurisdictional. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005); *Kontrick*, 540 U.S. at 455–56 & n.10 (observing that Rules 45(b) and 9006 are "modeled on Federal Rule of Civil Procedure 6(b)").

Accordingly, even though the district court was without authority to grant an extension under Rule 6(b)(2), it retained the power to consider whether the plaintiffs had waived compliance with the rule or whether an equitable exception applied. *See Weitzner*, 802 F.3d at 311. The defendants claim that the plaintiffs never objected to the extension and were not prejudiced by the delay. Any objection on timeliness grounds may therefore have been waived. *Compare Advanced Bodycare*, 615 F.3d at 1359 n.15 ("[S]ince Rule 6(b) is a claims-processing rule, [defendant-appellee], in failing to object to the district court's violation of the rule (by extending the time for filing post-trial motions) forfeited its objection to the time extension."), *with Dill*, 525 F.3d at 619 (no waiver where party failed to oppose request for extension but subsequently raised objection in response to Rule 50(b) motion).

We see no reason, however, to resolve that issue now. Although the plaintiffs never objected in the district court, it is not

clear whether they had an effective opportunity to do so given the district court's quick denial of the motion and of reconsideration. Under the circumstances, we prefer to leave it to the district court to consider in the first instance whether the plaintiffs waived objection to the court's improper grant of an extension of time or whether an equitable exception to the prohibition of such extensions applied on the facts of this case. Accordingly, we vacate the district court's post-judgment orders denying the defendants' motions for lack of jurisdiction and remand for further proceedings consistent with this opinion.

## CONCLUSION

For these reasons, we VACATE the judgment as to Legg's pregnancy discrimination claim and REMAND with instructions to conduct a new trial, and VACATE the orders denying the defendants' post-trial motions and REMAND for further proceedings consistent with this opinion.