17-2861(L)
*Legg v. Ulster County*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand twenty.

PRESENT:
>PETER W. HALL,
>GERARD E. LYNCH,
>SUSAN L. CARNEY,
>>*Circuit Judges.*

—————————————————————————————

ANN MARIE LEGG,

>*Plaintiff-Appellant,*

PATRICIA WATSON,

>*Plaintiff-Appellant–Cross-Appellee,*

>v.

No. 17-2861 (L)
17-2863 (XAP)

ULSTER COUNTY, PAUL J. VANBLARCUM, in his official capacity as Sheriff of the County of Ulster, and individually,

>*Defendants-Appellees–Cross-Appellants.*\*

—————————————————————————————

---

\* The Clerk of Court is directed to amend the caption as shown above.

FOR APPELLANTS:                          STEPHEN BERGSTEIN, Bergstein &
                                         Ullrich, LLP, New Paltz, NY.

                                         Brendan Klaproth, Esq., Washington, DC.

                                         Joseph Ranni, Esq., Florida, NY.

FOR APPELLEES:                           MATTHEW J. KELLY (Amanda Davis
                                         Twinam, *on the brief*), Roemer Wallens
                                         Gold & Mineaux, LLP, Albany, NY.

FOR AMICI CURIAE:                        Gillian L. Thomas, Lenora M. Lapidus,
                                         Women's Rights Project, American Civil
                                         Liberties Union Foundation, New York,
                                         NY.

                                         Elizabeth Morris, Cynthia Thomas
                                         Calvert, Center for WorkLife Law, UC
                                         Hastings College of the Law, San
                                         Francisco, CA.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 29, 2017, is **AFFIRMED** as to Ann Marie Legg.

In July 2008, plaintiff Ann Marie Legg, a corrections officer at the Ulster County Jail, requested that she be permitted to work light duty during the course of her then-ongoing pregnancy. Defendants Ulster County and Sheriff Paul J. VanBlarcum (collectively, "the County") denied her request. In so doing, they purported to apply a policy instituted in 2007 that allows only employees injured on the job to receive light duty assignments. Having denied her request, they offered Legg two options: (1) to work full duty in positions requiring regular contact with inmates or (2) to exhaust her accrued leave and file for New York State disability benefits.

In response, Legg sued the County in 2009, claiming that she suffered unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("the Act"). In August 2014, at the close of Legg's case at trial, the district court (Scullin, *J.*), granted the County judgment as a matter of law under Fed. R. Civ. P. 50(a)(1)(B), reasoning that because the policy allowing light duty assignments only to officers who suffered on-the-job injuries applied "across the board to everybody," it could not be unlawfully discriminatory. J. App'x 1051.

Legg timely appealed the district court's judgment. While that appeal was pending, the Supreme Court decided *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015). In *Young*, the Court ruled, in the context of a disparate treatment claim under the Act, that even a facially neutral accommodation policy could give rise to an inference of unlawful discrimination if the policy imposes a "significant burden" on pregnant employees that is not justified by the employer's non-discriminatory explanation. *Id.* at 1354. In view of *Young*, we vacated the district court's judgment and remanded the case for a new trial. *Legg v. Ulster Cty.*, 820 F.3d 67 (2d Cir. 2016). Because we found that "Legg ha[d] adduced sufficient evidence for a jury to have considered whether the County's policy was motivated by a discriminatory intent," we did not reach her disparate impact arguments. *Id.* at 74.

The retrial occurred in August 2016, with Legg proceeding on both disparate treatment and disparate impact theories. At the close of trial, the jury pronounced a verdict for the County on her disparate treatment claims. The disparate impact claim, on the other hand, was submitted to the district court for decision. In July 2017, the district court dismissed Legg's disparate impact claim, finding that she had failed to present evidence that pregnant women were unable to perform full duty assignments, and therefore did not establish an evidentiary basis from which the court could conclude that she and other pregnant women were similarly situated to officers with on-the-job injuries. *Legg v. Ulster Cty.*, No. 09-CV-550 (FJS), 2017 WL 3207754, at *9 (N.D.N.Y. July 27, 2017).

Legg now appeals the district court's ruling on her disparate impact claim. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

3

## I.

The Ulster County Sheriff's Office, which employs corrections officers at the Ulster County Jail (the "Jail"), maintains a "Line of Duty Injuries/Light Task Assignments" policy (the "Policy"). J. App'x 303. The Policy lies at the center of this appeal. It provides: "An employee injured in the line of duty and prohibited from performing full duty status assignments by an attending physician may be placed on line of duty injury leave." *Id.* at 304. At trial, Sheriff VanBlarcum testified that the sole purpose of the Policy was to provide him with the discretion to order officers who suffered on-the-job injuries to return to work in a light duty capacity when medically possible rather than remaining home on full-time leave with full salary, as state law would otherwise entitle them to do.[1] Both Sheriff VanBlarcum and Lieutenant Jon Becker, the supervising officer then in charge of the Jail's internal affairs, testified that the Policy did not apply to an officer who sustained an injury or illness outside the course of his or her employment. VanBlarcum averred further that two other officers became pregnant during the period when the Policy applied, and neither of them either requested or received light duty.

On July 8, 2008, when Legg was approximately two months pregnant, she provided Jail authorities a note from her treating obstetrician, Dr. Andrew Lefkovitz. The note stated: "To whom it may concern, Ann Marie Legg is under my care for pregnancy. Ann Marie is able to work at this time but shouldn't have direct contact with inmates." *Id.* at 297. Legg testified that she soon after received a phone call from Lieutenant Becker. Becker informed her that she would be required to take New York State disability leave if she could not provide a revised doctor's note stating that she could work without restriction. On July 10, Legg received a letter signed by Undersheriff Frank Faluotico. Faluotico wrote that "[e]mployees are afforded light duty assignments at the Sheriff's discretion for work-related

---

[1] New York General Municipal Law § 207–c(1) provides that any "corrections officer . . . injured in the performance of his or her duties . . . shall be paid by the municipality by which he or she is employed the full amount of his or her regular salary or wages until his or her disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness."

injuries/illnesses only . . . . Therefore you have the option of being re-evaluated by your attending physician and returning to work full duty capacity . . . or you may utilize accrued time (sick, vacation, personal) and file for NYS Disability benefits . . . ." *Id.* at 299. On July 10—the same day that she received the letter from Undersheriff Faluotico—Legg tendered Jail authorities a revised note from Dr. Lefkovitz. The new note advised that Legg was "able to work with no restrictions." *Id.* at 301.

For a brief period thereafter, Legg was assigned to positions such as the central control room and reception area, which involved no inmate contact. By August 2008, however, she was again assigned to work full duty assignments with inmates.

Legg testified that, in October 2008, when she was approximately six months pregnant, she spoke with Sergeant Kerry Winters about her predicament. Legg requested that Sergeant Winters transfer her to a different position, testifying that she did so because she "felt uncomfortable . . . [b]ecause I was pregnant. I was scared." *Id.* at 125. Winters sent an email to Lieutenant Becker and other jail officials advising that he was temporarily reassigning Legg to the control room "to negate her claim that she came to me and I 'failed to act' by doing nothing." *Id.* at 219. This reassignment was, however, reversed by Lieutenant Becker, who determined that Legg was not entitled to an accommodation under the Policy.

In November 2008, Legg was working in a full duty position with inmates while seven-and-a-half months pregnant. She witnessed an inmate fight occurring in the bathroom area of the residential dorm where she was stationed. After orally commanding the inmates to stop fighting, she retreated from the area, went to her desk, and called for backup manpower. When they arrived, Legg did not follow the arriving officers into the bathroom area because she didn't want to "tak[e] any risk of my unborn child." *Id.* at 131. Legg testified that, nevertheless, she felt her "belly just contracting and it just—my nerves were . . . totally shot," and reported that she went straight to the medical unit after the incident. *Id.* at 132–33. Shortly after this incident, she was placed on bed rest by her doctor and did not return to work until after the conclusion of her pregnancy, some three-and-a-half months later.

## II.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress amended the Act and specified that the term "because of sex" prohibited discrimination "on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). The Act provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ." *Id.* The Act does not, however, impose an affirmative obligation on employers to provide accommodations to pregnant employees that they do not provide to other employees who are "similar in their ability or inability to work." *See id.*

Disparate impact suits under the Act follow the framework applicable to Title VII disparate impact suits generally. To prevail on her claim, Legg must first state a prima facie case by "(1) identify[ing] a specific employment practice or policy; (2) demonstrat[ing] that a disparity [of impact] exists; and (3) establish[ing] a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citations omitted).

After a bench trial, we review a district court's factual determinations for clear error. *Atl. Specialty Ins. Co. v. Coastal Envt'l Grp., Inc.*, 945 F.3d 53, 63 (2d Cir. 2019). A finding of fact is clearly erroneous only when we are "left with the definite and firm conviction that a mistake has been committed." We review *de novo* the district court's conclusions of law, and its application of law to the facts. *Id.*

In this case, the district court found that Legg had demonstrated that applying the Policy, the County could hypothetically treat pregnant corrections officers differently from other officers similar in their "ability or inability to work." 42 U.S.C. § 2000e(k). Unlike officers whose ability to work is compromised by a work-related injury, under the Policy "pregnant women will never be afforded light-duty assignments . . . if they are no longer able

6

to work full duty." *Legg*, 2017 WL 3207754, at *6. The court nonetheless dismissed her claim because it found that the record was "absolutely lacking in . . . any evidence indicating that pregnant women were *unable* to perform full-duty at the Jail," and therefore there was "simply no evidence that [the] Policy actually had an impact on pregnant women." *Id.* at *9. In sum, the court held that Legg's claim failed because she failed to prove that she (or any other pregnant officer) was, in fact, "similar in [her] ability or inability to work" to officers who had suffered on-the-job injuries, so as to trigger the Act's protections. *Id.* at *9-10 (citing 42 U.S.C. § 2000e(k)).

We hold that the district court did not clearly err in making this factual determination and dismissing Legg's claim. The Act establishes no assumptions about a pregnant woman's ability or inability to work. Therefore, to establish a prima facie case, a plaintiff pursuing a disparate impact claim under the Act must demonstrate, at a minimum, that *some* pregnant women are "similar in their ability or inability to work" to non-pregnant comparators receiving the accommodations sought by the plaintiff. 42 U.S.C. § 2000e(k). Simply proving that all pregnant women will automatically be denied accommodations under the County's Policy is insufficient because it is tantamount to requesting that the district court "assume that pregnant women are inherently incapable of working full-duty." *Legg*, 2017 WL 3207754, at *9.

In weighing the evidence in this case, the district court considered that Legg presented her employer with a note from her treating obstetrician, Dr. Lefkovitz, but found that "the value of that note is nominal because just two days later the same doctor claimed that she could work full duty." *Id.* at *9 n.5. Legg's ability to procure conflicting doctor's notes within a short period of time is reasonably susceptible to different interpretations, but where "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Atl. Specialty Ins. Co.*, 945 F.3d at 63. Moreover, neither of Dr. Lefkovitz's notes supplied any clinical findings or medical justification for his recommendation. Their conclusory nature stands in sharp contrast to the evidence presented in *Young*, where the plaintiff had submitted documentation from her doctor that she "should

7

not lift more than 20 pounds during the first 20 weeks of her pregnancy or more than 10 pounds thereafter." 135 S. Ct. at 1344.

Our review of the record, however, suggests that the district court overlooked some relevant evidence in making its findings of fact. For example, the district court failed to note that Legg had again requested a transfer to a position without inmate contact in October 2008 or that she sustained a serious health-related complication after witnessing the inmate fight that occurred in November 2008.

Nevertheless, even after considering this additional evidence, we are unable to conclude that the district court's finding that Legg failed to meet her evidentiary burden is clearly erroneous. Legg did not provide any additional medical documents to justify her October 2008 reassignment request. And, while the medical consequences stemming from the November 2008 incident could lead a factfinder to conclude that Legg had serious physical limitations before that date, the district court was within its discretion to conclude that this incident alone was insufficient to establish her inability to work full duty during the preceding months.

In so ruling, we do not mean to imply that Legg had to demonstrate that the Policy had a statistically significant impact on female officers generally—or even on pregnant female officers—to make her prima facie case. As Legg and *amici* contend with some force, it is unclear how statistical evidence could ever be adduced in an environment where only three employees have been pregnant over the span of a decade. We do not need to identify the precise quantum of proof that would have been sufficient to sustain Legg's evidentiary burden, however, in order to affirm the district court's judgment in this case. We do observe that medical evidence is particularly probative in an Act case where one of the central questions is whether a pregnant officer is "similar in [her] ability or inability to work" to officers who sustained on-the-job injuries. *Cf. Bradley v. Pizzaco of Nebraska, Inc.*, 939 F.2d 610, 612–13 (8th Cir. 1991) (relying on medical evidence that African-American men were more likely to have a condition preventing them from shaving in racial disparate impact challenge to a no-beard policy); *Lynch v. Freeman*, 817 F.2d 380, 384–85 (6th Cir. 1987) (relying on medical evidence that women were more likely to suffer urinary tract infections

8

as a result of using unsanitary portable toilets at a job site in granting judgment to plaintiff on disparate impact claim).

We are sympathetic to the difficult choice that Legg faced between working full duty in a hazardous environment and losing substantial income by going on leave and receiving only disability benefits. Like the district court, we point out that the County's policy may be "vulnerable to a disparate impact claim" under the Act, upon a sufficient evidentiary showing of pregnant officers' inability to perform full duty work. *Legg*, 2017 WL 3207754, at *9. On the record before us, however, we are compelled to conclude that the district court did not clearly err in finding that the evidence presented by Legg was insufficient to sustain her claim.

* * *

We have considered Legg's remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the district court is **AFFIRMED** as to Legg's claims.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court