In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2984

MARTIN GONZALEZ,

*Plaintiff-Appellant*,

*v.*

CITY OF MILWAUKEE,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-C-1070 — **Lynn Adelman**, *Judge*.

ARGUED APRIL 1, 2015 — DECIDED JUNE 26, 2015

Before WOOD, *Chief Judge*, and FLAUM, *Circuit Judge*, and
KENNELLY, *District Judge*.*

FLAUM, *Circuit Judge*. Martin Gonzalez was a police of-
ficer for the City of Milwaukee from 1995 until 2011. He was
discharged from his employment with the City following an

---

* Hon. Matthew F. Kennelly of the Northern District of Illinois, sitting by
designation.

incident in January 2011 in which he failed to report for work. Gonzalez is Caucasian and worked in a predominately African-American police district in Milwaukee, District 4. Gonzalez alleges that he was discharged because of his race in violation of Title VII of the Civil Rights Act of 1964.

The district court granted summary judgment in favor of the City of Milwaukee after denying Gonzalez's motion to compel discovery, in which he specifically requested that the City turn over a District 4 "climate survey." Gonzalez now appeals the district court's denial of his motion to compel. We affirm.

## I. Background

Martin Gonzalez was hired by the City of Milwaukee as a police officer in 1995. At some point prior to January 2011 (it is unclear precisely when), Gonzalez was transferred to District 4.[1] Between March 2009 and March 2011, Gonzalez was disciplined on seven different occasions for various misbehaviors, including: "failure … to abide by the ordinances in another jurisdiction," "idling and loafing," "causing damage to department property and … fail[ing] to report to [a] supervisor," "fail[ing] to be courteous toward the public … and … officiously interfering in the private business of another," "failing to fully investigate a crime," and "fail[ing] to promptly and thoroughly investigate and report a crime." Aff. of Franklin Gayle in Supp. of Def.'s Mot. for Summ. J. 1–

---

[1] Gonzalez states that he was hired in 1995, and "began experiencing workplace problems roughly fourteen years later, after having been transferred to District 4." Br. of Pl. Appellant Martin Gonzalez 1.

2. Gonzalez received discipline ranging from an official reprimand to a ten-day suspension for these infractions.

On January 28, 2011, Gonzalez requested to be off from work on January 30, but his request was denied. Gonzalez then submitted a request to switch shifts with another officer, and he informally arranged for another officer to take his shift. Gonzalez's formal request, however, was neither approved nor denied. Gonzalez did not report to work on the 30th, but neither did his replacement. Gonzalez's supervising sergeant, Sergeant Flowers, called Gonzalez several times on the morning of the 30th, but could not reach him. Sergeant Flowers also could not locate an approved replacement form on file. When Gonzalez eventually returned Sergeant Flowers's phone call, Sergeant Flowers ordered Gonzalez to report to work. Gonzalez told Sergeant Flowers that he was at an event with his daughter and that he did not have transportation. Gonzalez did not report to work on January 30, thereby disobeying Sergeant Flowers's direct order to do so.

Following this incident, Captain O'Leary, Sergeant Flowers's supervisor, referred the matter to the Professional Performance Division (PPD) (i.e., internal affairs) for investigation. Following the PPD investigation, Chief of Police Edward Flynn discharged Gonzalez on April 6, 2011. Gonzalez subsequently requested a due process hearing under Wis. Stat. § 62.50(17), which was held on September 28 before the Fire and Police Commission (FPC). At this hearing, Gonzalez had the opportunity to present and cross-examine witnesses. The FPC then issued a decision sustaining Gonzalez's discharge, finding that there was substantial evidence to support the termination.

Gonzalez states that the environment of District 4 "turned hostile toward non-African Americans" after Chief Flynn promoted Captain O'Leary—who is African-American—and assigned O'Leary to District 4. Gonzalez argues that he overheard Captain O'Leary refer to District 4 as his "chocolate city," and mention that he wanted District 4 to be a "chocolate island." Gonzalez alleges that Sergeant Flowers—who is also African-American—made similar comments. Gonzalez contends that Captain O'Leary transferred a number of Caucasian officers out of District 4, but transferred almost no African-American officers out of the District. The City of Milwaukee contends that Gonzalez's claims about transfers are factually inaccurate.

Gonzalez further alleges that in District 4, Captain O'Leary and Sergeant Flowers treated Caucasian officers differently than African-American officers. Specifically, Gonzalez alleges that Caucasian officers were scrutinized more closely than African-American officers, and that Sergeant Flowers would "talk down" to Caucasian officers by saying things like, "what are you doing here at the station?", "why aren't you working?", and "get out of my station." Gonzalez further claims that Caucasian officers were frequently singled out for not completing their reports faster, whereas African-American officers were not. Gonzalez also claims that Caucasian officers were frequently told to finish their reports at a later time and to get back on the street, while African-American officers were permitted to work on their reports without comment.

To aid his claim of racial discrimination, Gonzalez refers to a comparator officer—Officer Truman Dodd—to support his allegation that he was treated unfairly following the Jan-

uary 30 incident. Officer Dodd is African-American, also works in District 4, and was also under the supervision of Captain O'Leary during the relevant time period. On March 24, 2011, Officer Dodd notified the late shift lieutenant that he was boarding a plane because his daughter had been in a school bus accident in Atlanta, and he was going there to be with her. Officer Dodd informed the late shift lieutenant that he, therefore, would not be able to make his noon shift. When Officer Dodd did not report to work, his noon shift lieutenant called him to find out where he was (apparently the late shift lieutenant had not conveyed the information), and Officer Dodd explained the situation. The noon shift lieutenant advised Officer Dodd that he should have called again to update the department about his status, but he was not disciplined. Captain O'Leary determined that Officer Dodd would not be paid for the day of work that he missed, and that he would be granted three discretionary days off. Prior to March 24, Officer Dodd did not have any history of disciplinary actions.

On November 8, 2011, Gonzalez filed a complaint against the City of Milwaukee, the Milwaukee Police Department, and the Milwaukee Board of Fire & Police Commissioners, alleging claims under Title VII of the Civil Rights Act of 1964, and the Equal Protection Clause, as well as claims under 42 U.S.C. §§ 1981 and 1983. The district court dismissed both the Milwaukee Police Department and the Milwaukee Board of Fire & Police Commissioners from the suit in April 2012. After several extensions of the discovery deadline, the district court set the final discovery deadline for May 30, 2013, and the deadline for dispositive motions for June 15 (written discovery closed earlier on October 15, 2012). On June 14, 2013, Gonzalez filed a motion to compel discovery

requesting, among other things, a document that the parties refer to as a "climate survey" of District 4 (as we will discuss in detail below, neither party fully explains what is contained in this survey or when it was conducted). In his motion to compel, Gonzalez claimed that he had, earlier in the discovery process, requested:

> Any and all documents that relate to or pertain to any complaints of discrimination from January 2, 2005 to the present, including Plaintiff's complaint of discrimination, against Defendant, including those documents relating to investigations conducted by Defendant into complaints of discrimination against Defendant.

Pl.'s Mot. to Compel Disc. and Supporting Mem. of Law 18. At some point after this original request, it seems, Gonzalez became aware of the District 4 climate survey (although it is unclear exactly how or when). Referencing this discovery and his request, Gonzalez stated in his motion to compel:

> Plaintiff asked for additional information about investigations into discrimination. Defendant acknowledges the existence of an investigation into discrimination at District 4. However, Defendant now refuses to provide any information about the investigation because "the request is untimely and does not tie back to any original discovery demand … ."

*Id.* at 19. The City responded to Gonzalez's motion to compel, stating the following about the climate survey:

> On May 8, 2013 (past the written discovery deadline), Plaintiff's counsel asked for a copy of an open discrimination investigation at District 4. While this is the District that Gonzalez worked in, he incorrectly assumed that this investigation was about a "discrimination complaint." The request was untimely and does not tie back to request number 26 because it is not a "discrimination" complaint, but a "climate survey investigation," it post-dates Gonzalez's termination, and he no longer works there or has participated in "the climate" for over two years.

Resp. Br. in Opp'n to Pl.'s Mot. to Compel 10.

It is undisputed that Gonzalez first made a specific request for this survey on May 8, 2013,[2] which was past the deadline for written discovery, but before the deadline for all other discovery and before the deadline for dispositive motions. It is also apparent that Gonzalez attempted to procure this survey through an open records request on May 22. The City of Milwaukee denied this request, citing the fact that the request involved an open investigation. On July 15, the City moved for summary judgment on all of Gonzalez's claims. On July 30, the district court denied Gonzalez's motion to compel production of the climate survey, but gave

---

[2] In his opening brief, Gonzalez states that he first became aware of the climate survey in March 2013. However, Gonzalez clarifies in his reply brief that this was an error, and that he did not request the survey until May 2013.

Gonzalez until September 13, 2013 to take any depositions, related to the survey or otherwise. The district court subsequently denied the City's summary judgment motion without prejudice on August 9, 2013, and allowed it to refile its motion on October 1, 2013. On August 14, 2014, the district court granted summary judgment in favor of the City on all of Gonzalez's claims. Gonzalez appealed the district court's summary judgment ruling, as well as the district court's denial of his motion to compel discovery. At oral argument, however, Gonzalez conceded that his appeal of the district court's summary judgment ruling, on the current record, lacked merit and abandoned all arguments to the contrary. (Gonzalez implicitly argues that if we reverse the district court's denial of his motion to compel and permit discovery of the climate survey, the survey will provide him with sufficient information  to support his discrimination claims so as to survive summary judgment.) Thus, we will only address the district court's denial of Gonzalez's motion to compel.

## II. Discussion

We review a district court's decision to deny a motion to compel for abuse of discretion. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013) (citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000)). We will only reverse a district court's ruling after a clear showing that the denial of discovery resulted in actual and substantial prejudice. *Id.* (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001)).

Gonzalez argues that the district court abused its discretion in denying his motion to compel because "the relevancy of [the climate survey] is so obvious that there is little need

to further belabor the matter." Br. of Pl. Appellant Martin Gonzalez 18. Gonzalez seems to rest his claim of discrimination on the theory that the environment of District 4 was "hostile" to non–African Americans, and that this led to a pattern of Caucasian police officers being scrutinized more closely and disciplined more severely than African-American officers; this environment, Gonzalez claims, ultimately led to his termination. He bolsters this theory by pointing to statements made by other officers in District 4 echoing similar concerns, as well as comparator evidence involving Officer Dodd. It would seem, then, that a survey about the climate or environment of District 4 might further support Gonzalez's claim of widespread discriminatory discipline and treatment in District 4.

However, Gonzalez's request for the climate survey was made after the close of written discovery. He does not explain the lateness of his request, and the district court did not abuse its discretion in overruling his contention that the request was encompassed within his earlier request for documents relating to complaints of discrimination. (We have, in previous cases, considered the lateness of a discovery request in concluding that the district court did not abuse its discretion in denying a motion to compel discovery material. *See Packman*, 267 F.3d at 647.) Additionally, very little is known about the discovery that Gonzalez seeks, making it difficult to analyze the extent to which he was prejudiced by its non-disclosure, if at all. We do not know, precisely, when or why this survey was conducted.[3] We do not know wheth-

---

[3] The only indication regarding the timing of the climate survey is the City of Milwaukee's statement in its response to Gonzalez's motion to

er the survey is still ongoing, or whether it has concluded. And other than knowing that the survey involves the "climate" of District 4, we know very little about the survey's substance.[4] While one could argue that the reason we know so little about the survey is precisely because the district court denied Gonzalez's motion to compel, it is also apparent that Gonzalez neglected to use all available avenues to find out more specific information about the climate survey, which may have aided him in his request, or at the very least his arguments on appeal. For example, Gonzalez could have taken advantage of the district court's ruling allowing him to take any depositions through September 13, 2013 in order to find out more about the survey and whether it was relevant to his claims. He did not do so, nor does he explain this lack of diligence. As a result, we are left to only speculate about the contents of the climate survey and its potential impact on Gonzalez's case. Thus, Gonzalez does not demonstrate how the district court abused its discretion in denying his motion to compel, nor does he satisfy the prejudice requirement.

---

compel that the survey was conducted two years after Gonzalez's discharge from the department. *See* Resp. Br. in Opp'n to Pl.'s Mot. to Compel 10.

[4] Gonzalez represents that he learned through his open records request that the survey "was initiated by Sergeant Sebastian Raclaw of the Professional Performance Division [PPD] and pertained to the experiences of District 4 officers with the supervision and leadership of Captain Jerome O'Leary … . It also reveals the survey pertained to an investigation of a possible criminal offense or misconduct by O'Leary." Reply Br. of Pl. Appellant Martin Gonzalez 4–5.

Given the lateness of Gonzalez's request, his lack of diligence in obtaining information about the climate survey, as well as his inability to show how he was prejudiced by the district court's ruling, we find that the district court did not abuse its discretion in denying Gonzalez's motion to compel discovery.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Gonzalez's motion to compel discovery.