In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 15-2088 and 15-3658

WINE & CANVAS DEVELOPMENT, LLC, ANTHONY SCOTT, TAMARA MCCRACKEN, AND DONALD MCCRACKEN,

*Plaintiffs-Appellants*,

*v.*

CHRISTOPHER MUYLLE, THEODORE WEISSER, YN CANVAS LLC D/B/A ART UNCORKED, ART UNCORKED, LLC, AND WEISSER MANAGEMENT GROUP, LLC,

*Defendants-Appellees*.

———————————

Appeals from the United States District Court for
the Southern District of Indiana, Indianapolis Division.
No. 11-cv-01598 — **Tanya Walton Pratt**, *Judge*.

———————————

ARGUED NOVEMBER 9, 2016 — DECIDED AUGUST 17, 2017

———————————

Before BAUER and KANNE, *Circuit Judges*, and FEINERMAN, *District Judge*.[*]

———————————

[*] Of the Northern District of Illinois, sitting by designation.

FEINERMAN, *District Judge*. Wine and Canvas Development, LLC, Anthony Scott, Tamara McCracken, and Donald McCracken sued Christopher Muylle, Theodore Weisser, YN Canvas CA, LLC, Art Uncorked LLC, and Weisser Management Group LLC, bringing federal trademark and state law claims. Muylle brought several counterclaims, including one for abuse of process under Indiana law. Weisser defaulted, and it appears that Weisser and Muylle were the only members of the defendant LLCs, so practically speaking the case ultimately amounted to Plaintiffs against Muylle. Pretrial motions disposed of much of the case, and the jury found for Muylle on Plaintiffs' trademark infringement and false designation of origin claims and on Muylle's abuse of process counterclaim. Plaintiffs appeal, and we affirm.

## I. Background

Wine & Canvas is a business that specializes in hosting events colloquially known as "painting nights." These are social evenings where patrons, following a teacher's instructions, create a painting while enjoying wine and other adult beverages. Wine & Canvas operated locations in Indianapolis, Bloomington, and Oklahoma City.

In 2008, Muylle befriended Scott, who was already acquainted with Weisser. They discussed a franchise arrangement under which Muylle and Weisser would move from Indiana to San Francisco to open a Wine & Canvas operation there. Muylle and Weisser signed a license agreement on behalf of their entity, YN Canvas CA, LLC.

On August 10, 2011, Muylle and Weisser launched their Wine & Canvas location in San Francisco. Tamara McCracken and Scott were present at the launch, and McCracken

taught the first class that day. McCracken also worked with Muylle and Weisser to approve paintings they would use at their events. Plaintiffs lent additional support by giving company email addresses to Muylle and Weisser and by advertising the San Francisco operation on the Wine & Canvas website.

Disagreements soon arose over how the San Francisco operation would be structured and what degree of ownership Plaintiffs would hold. These disagreements continued without resolution. Finally, on November 18, 2011, Muylle and Weisser gave notice that they were terminating the license agreement. At that point, they changed the name of the business to "Art Uncorked" and ceased using the Wine & Canvas name or other marks.

On November 28, 2011, Plaintiffs filed a complaint in Indiana state court alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and other claims. Defendants timely removed the suit to federal court, and Muylle answered and filed several counterclaims. His initial counterclaims invoked California franchise law, but he later added federal trademark cancellation and Indiana law abuse of process counterclaims.

From the beginning, the proceedings were slow-moving, principally due to the conduct of Plaintiffs and their attorneys. Plaintiffs failed to serve written discovery responses on their initial due date, March 20, 2013. They then failed to meet the extended deadline of May 1, 2013, leading Muylle to file a motion to compel, which was granted. After Plaintiffs failed to respond by early June, the district court imposed sanctions and ordered them to serve their responses by June 14, 2013, a deadline that later was extended to June

17. Plaintiffs served woefully incomplete responses on June 17 at 11:55 p.m., and "final" responses at 4:10 a.m. the next day. Muylle asserted that the "final" responses were not only late, but also incomplete because they did not itemize Plaintiffs' damages, and he moved for further sanctions. Citing the responses' tardiness and also their incompleteness, the magistrate judge recommended sanctions in the amount of $2,156, the costs to Muylle of filing the sanctions motion, and the district court adopted the recommendation. By the end of the case, Plaintiffs had been sanctioned three times. Summarizing their conduct, the district court observed that they had "flooded the Court with filings … and … filed numerous claims that the court has found to be without merit." 2014 WL 4053928, at *15 (S.D. Ind. Aug. 15, 2014).

Meanwhile, the district court dismissed the California franchise law counterclaims, and both sides then moved for summary judgment. The court granted Plaintiffs summary judgment on Muylle's trademark cancellation counterclaim, but his abuse of process counterclaim survived. The court granted summary judgment to Muylle on most of Plaintiffs' claims, including trademark dilution, sale of counterfeit items, unfair competition, bad faith, tortious conduct, abuse of process, breach of contract, fraud, and a claim for compensation under the Indiana Crime Victims Act. The court also granted partial summary judgment to Muylle on Plaintiffs' trademark infringement claim, finding that for any use through November 18, 2011, Plaintiffs had impliedly consented to Muylle's using the marks.

Only three claims proceeded to trial: Plaintiffs' claims of trademark infringement and false designation of origin (for any use of the marks after November 18, 2011), and Muylle's

abuse of process counterclaim. The jury returned a verdict for Muylle on all counts, rejecting Plaintiffs' claims and awarding Muylle $ 270,000 on his counterclaim. After Plaintiffs filed their appeal, the district court granted Muylle's motion for fees under the Lanham Act, awarding $ 175,882.68.

## II. Discussion

Plaintiffs challenge fourteen rulings by the district court. Many of those challenges are wholly unsupported by developed argument citing the record and supporting authority, and are thus forfeited. See *Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010); *Ajayi v. Aramark Business Serv's, Inc.*, 336 F.3d 520, 529 (7th Cir. 2003) (noting that an appellant must "identify the legal issue, raise it in the argument section of her brief, and support her argument with pertinent authority"). Other issues, though properly presented, are plainly meritless and need not be addressed. Only the following issues warrant discussion.

### A. Sanctions Order for Tardy Discovery Responses

Plaintiffs contend that the district court erred in sanctioning them $ 2,156 in connection with their June 2013 discovery responses, which were tardy and failed to provide a damages itemization. They argue that the sanctions award is fatally inconsistent with a later ruling in which the court denied additional sanctions for Plaintiffs' failing to provide the same itemization; the court denied those sanctions on the ground that Muylle had not produced the financial records necessary for Plaintiffs to itemize their damages. In Plaintiffs' view, when the district court agreed that Muylle's failure to produce records prevented them from preparing an

itemization, it undermined the basis for the earlier sanctions award.

We review a trial court's imposition of discovery sanctions for abuse of discretion. See *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013); *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). "Under this standard, we uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently." *Maynard*, 332 F.3d at 467. "A party meets its burden under this standard only when it is clear that no reasonable person would agree with the trial court's assessment of what sanctions are appropriate." *Scott*, 725 F.3d at 778 (internal quotation marks and alteration omitted).

The district court did not abuse its discretion. As the magistrate judge explained, sanctions were warranted because Plaintiffs' discovery responses were late, albeit by one day. Sanctions for missing a deadline by one day certainly are not mandatory, but neither are they prohibited given the wide latitude district courts have in such matters. See *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) ("[C]ase management depends on enforceable deadlines … . In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines.") (internal quotation marks omitted); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) ("Rule 6(b) … clearly gives courts both the authority to establish deadlines and the discretion to enforce them."); *Shine v. Owens-Ill., Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("[J]udges must be able to enforce deadlines.") (internal quotation marks omitted). Of course, sanctions must be reasonable, and a heavy sanction such as dismissal or an outsized monetary award might be unwarranted in response to minor

tardiness. See *FM Indus. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335, 339 (7th Cir. 2010) (holding unreasonable an $815 million sanctions request for missing a discovery deadline by one day). But the sanctions here were reasonable, consisting solely of the costs Muylle incurred related to the sanctions motion. Thus, even though the district court later held Plaintiffs' failure to itemize their damages to be reasonable, the untimeliness of the June 2013 discovery responses provided a legitimate, independent ground for sanctions. This is particularly so given Plaintiffs' dilatory conduct prior to the sanctions order; they had already missed multiple discovery deadlines, causing Muylle to file a motion to compel, and they had been sanctioned once before. Against this backdrop, it was not unreasonable for the district court to conclude that even a single day's tardiness required some sanction to deter future misbehavior.

## B. Implied Consent to Use the Wine & Canvas Marks

In moving for summary judgment on Plaintiffs' trademark infringement claim, Muylle contended that from August 2011 through November 18, 2011, Plaintiffs had granted him implied consent to use their marks. Citing *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503 (N.D. Ill. 2011), Plaintiffs responded that to show implied consent, Muylle had to demonstrate that: "(1) the senior user actively represented it would not assert a right or claim; (2) the delay between the active representation and the assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* at 512–13. The district court disagreed, reasoning that the Seventh Circuit had not adopted the second and third requirements. 2014 WL 4053928, at *8. And finding that Plaintiffs' conduct—such as

aiding Muylle in establishing and operating the Wine & Canvas location in San Francisco—constituted an active representation that they would not assert a claim, the district court held that Muylle had established implied consent and thus granted summary judgment for all trademark infringement claims based on his use of the marks from August 2011 to November 18, 2011. *Ibid*.

Two years after the district court ruled, in *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 941 (7th Cir. 2016), we adopted the three-part test that Plaintiffs had proposed to the district court in this case. The district court's understandable failure to anticipate *Hyson* is of no moment, however, as Muylle was entitled to summary judgment on implied consent even under the correct standard.

As noted, it was clear around the time of Muylle's August 2011 launch in San Francisco that the parties disagreed over the new location's ownership structure. At that point, it would have been perfectly reasonable for Plaintiffs to require Muylle to cease using the Wine & Canvas marks until the disputes were resolved. Instead, Plaintiffs allowed Muylle to continue using the marks for months. That delay is inexcusable, satisfying the second part of the three-part test. As to the third, undue prejudice, given that Muylle moved across the country to start the San Francisco operation and stayed there to operate it, Plaintiffs' failure to promptly assert their rights prejudiced him. Accordingly, summary judgment would have been appropriate on the implied consent issue even had the district court applied the *Hyson* framework.

### C. Testimony Regarding Settlement Negotiations

Plaintiffs challenge the district court's admission of testimony concerning a statement that Scott made to Muylle during the parties' September 2012 settlement discussions regarding Plaintiffs' trademark claims. Specifically, Scott said that his goal was to "close [Muylle's] door[] or [Scott's] asshole attorney would close [it] for [him]." Plaintiffs argue that testimony regarding the statement was inadmissible under Federal Rule of Evidence 408.

"This court reviews a district court's interpretation of the Federal Rules of Evidence *de novo* but the district court's decision to admit evidence for abuse of discretion." *United States v. Turner*, 836 F.3d 849, 857 (7th Cir. 2016). Rule 408 provides in pertinent part:

(a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Although statements made in settlement negotiations are inadmissible to prove liability on the underlying claim, they may be admissible for other purposes, including "to show the defendant's … intent." *Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 484 (7th Cir. 2000).

That is precisely what Muylle did here. Scott's statement, made in the context of settlement negotiations concerning *Plaintiff's claims against Muylle*, were not offered to disprove liability *on those claims*, but rather to show Plaintiffs' improper intent and ulterior motive in filing their lawsuit for the purpose of proving Muylle's abuse of process counterclaim. See *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. App. 2005) ("Abuse of process has two elements: (1) ulterior purpose or motives; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding.") (internal quotation marks omitted). Under these circumstances, the testimony was not inadmissible.

This conclusion follows from the text of Rule 408. Paragraph (a) uses the term "a disputed claim," not "disputed claims" or "any claims." Subparagraphs (1) and (2) of paragraph (a) likewise speak of "the" claim. The Rule's use of the singular term "claim" suggests that settlement discussions concerning a specific claim are excluded from evidence to prove liability on *that* claim, not on others. That is, when a settlement discussion concerns Claim A, and statements from that discussion are later offered to prove or disprove liability on Claim B, Rule 408(a) does not make those statements inadmissible. We do not expect such circumstances to arise very often, as settlement discussions usually encompass multiple claims all at once. Here, however, there is no possibility that the settlement discussion, which occurred in

September 2012, addressed Muylle's abuse of process claim, which was not filed until months later.

### D. Summary Judgment on the Unfair Competition Claim

Plaintiffs challenge the district court's grant of summary judgment to Muylle on their state law unfair competition claim. Muylle's summary judgment motion argued that Plaintiffs had presented no evidence showing a likelihood of confusion between Muylle's marks and those belonging to Plaintiffs. The district court held that Plaintiffs failed to address that argument in the section of their opposition brief addressing the state law unfair competition claim and, citing *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003), considered the claim abandoned. 2014 WL 4053928, at *13.

That holding was in error, as Plaintiffs' argument on their state law unfair competition claim incorporated by reference their discussion of likelihood of confusion from the section of their brief addressing their Lanham Act trademark infringement claim. Indeed, the district court analyzed whether Plaintiffs had adduced sufficient evidence of likelihood of confusion in denying summary judgment to Muylle on the trademark infringement claim for the period following November 18, 2011. *Id*. at *9–11. Thus, the district court should not have granted summary judgment to Muylle on Plaintiffs' unfair competition claim.

Still, Plaintiffs are not entitled to reversal. The Lanham Act trademark infringement claim for the period following November 18, 2011 went to the jury and the jury found for Muylle. This matters because analysis of trademark infringement is essentially the same as analysis of Indiana un-

fair competition claims where, as here, the state law claim rests on trademark infringement. See *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 763 F.3d 696, 700 n.4 (7th Cir. 2014) ("[A]ll relevant authority we have found analyzes Indiana unfair competition claims *based on trademarks* the same as Lanham Act trademark claims, so we analyze all the claims together."). Thus, if the unfair competition claim had been tried, the jury would have rejected it along with the federal trademark infringement claim. See *Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1306 (7th Cir. 1993) ("Appellate courts should be slow to impute to juries a disregard of their duties, which implies that we should do what we can to save the verdict against the specter of inconsistency.") (internal quotation marks and citation omitted). It follows that there would be no point to reversing the grant of summary judgment on the unfair competition claim and remanding for trial.

### E. Lanham Act Attorney Fee Award

The district court awarded attorney fees to Muylle under the Lanham Act. 2015 WL 5513461 (S.D. Ind. Sept. 15, 2015). Plaintiffs seek reversal of that award on the ground that the award was entered after they had filed their notice of appeal. As a general rule, once a notice of appeal is filed, jurisdiction lies in the appeals court and not in the district court. See *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *United States v. Ali*, 619 F.3d 713, 722 (7th Cir. 2010). There are several exceptions to this rule, however, and we have unequivocally held that those exceptions include motions for attorney fees. See *Terket v. Lund*, 623 F.2d 29, 33 (7th Cir. 1980) (holding that a district court may award fees while the merits of a case are on appeal); see also *Kusay v. United*

*States*, 62 F.3d 192, 194 (7th Cir. 1995) (applying *Terket* to a non-fee issue that was not an "aspect[] of the case involved in the appeal").

The district court's order denying Plaintiffs' motion to reconsider the attorney fee order cited *Terket* and *Kusay* to support its exercise of jurisdiction over Muylle's motion. 2015 WL 6554641, at *3 (S.D. Ind. Oct. 28, 2015). On appeal, Plaintiffs cite *Kusay* for the proposition that filing a notice of appeal divests the trial court of jurisdiction, but they inexplicably fail to acknowledge that *Kusay* describes the *exception* to the rule invoked by the district court. Nor do Plaintiffs attempt to distinguish *Kusay* and *Terket* or argue that they were wrongly decided. This follows an unfortunate pattern in this litigation; as the district court noted, Plaintiffs "filed many motions to reconsider numerous court orders simply to reargue unaccepted arguments." 2015 WL 5513461, at *2. While a party may argue in good faith for the inapplicability, modification, or reversal of existing authority, it nonetheless has a duty to acknowledge and grapple with such authority. Pretending the authority does not exist in hopes that the court will overlook it is never the appropriate course.

### III. Conclusion

For the foregoing reasons, the district court's judgment is AFFIRMED.