In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-1690

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

WAL-MART STORES EAST, L.P.,
doing business as Wal-Mart Distribution Center #6025,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:18-cv-00783-bbc — **Barbara B. Crabb**, *Judge.*

_____

ARGUED MARCH 31, 2022 — DECIDED AUGUST 16, 2022

_____

Before MANION, HAMILTON and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Wal-Mart Stores East,
L.P. (Walmart) offered temporary light duty to employees
who were injured on the job. At times relevant to this appeal,
it did not offer similar light duty to employees who were
pregnant or who were injured outside of their work for
Walmart. The Equal Employment Opportunity Commission
(EEOC) brought this action against Walmart claiming that the

denial of light duty to pregnant women violated the Civil Rights Act of 1964 and the Pregnancy Discrimination Act. See 42 U.S.C. §§ 2000e(k) & 2000e-2(a)(1). The EEOC argued that by accommodating all workers injured on the job, and denying all pregnant women a similar accommodation, Walmart engaged in sex discrimination. After a contentious discovery process, the parties filed cross-motions for summary judgment, and the district court granted summary judgment to Walmart. We affirm.[1]

I.  *Factual and Procedural Background*

The EEOC's lawsuit challenges a policy to accommodate workers injured on the job at Walmart Distribution Center #6025 in Menomonie, Wisconsin. The center processes a variety of merchandise for distribution to Walmart stores, including through manual sorting and packing. Workers who unloaded and packed these items were assigned to different "modules" that varied significantly by weight. For some roles, workers needed to lift and handle boxes weighing 30 pounds or more.

Workers were sometimes injured on the job. In 2014, Walmart implemented a "Temporary Alternate Duty" Policy (TAD Policy) to offer light duty to those workers injured on the job who wanted to keep working and earning their full wages while complying with any relevant medical restrictions. For example, a worker with a lifting restriction after

---

[1] After the period relevant for this lawsuit, Walmart changed its policy and began offering temporary light duty to accommodate pregnant women. We do not consider evidence related to this change for purposes of determining whether Walmart's earlier policy violated the law. See Fed. R. Evid. 407.

an injury while loading boxes from a heavy module could be offered work that would not aggravate the injury, such as "label backing, rack labeling, paperwork, painting and detail cleaning." Employees on light duty under the TAD Policy were reevaluated for potential return to regular duty after 90 days.

Under the Wisconsin worker's compensation law, Walmart had a variety of legal and financial obligations to workers who were injured on the job. See Wis. Stat. ch. 102. Walmart says it designed the TAD Policy to reduce overall costs while improving employee morale. During the time relevant for this lawsuit, Walmart did not offer light duty, under the TAD Policy or otherwise, to pregnant workers or to workers who were injured off the job.

Instead, Walmart required pregnant workers with lifting or other physical restrictions related to pregnancy to go on leave. Some pregnant employees had to make difficult choices between continuing to work at a job that was becoming physically too demanding, or even dangerous, and going on unpaid leave for several months.

For example, Cassandra Lein testified that she had made a private arrangement with her boss to work lighter modules during the first trimester of her pregnancy. Eventually, however, that boss was unable to come to work, and Lein was required to work some of the heaviest modules. When Lein asked the office manager to avoid putting her on the heavier module, he denied her request and said "I don't understand why you're crying right now." Lein went home without pay that day.

Lein transferred twice to other departments, trying to find work that she could do safely while she was pregnant. She finally brought her physical restrictions to Walmart's attention because she "was getting a feeling in [her] side," and the pain was exacerbated by her work. She testified that she delayed bringing her pain to Walmart's attention because "then I would be out of a job. So I avoided the restrictions and chose to look for the advantages in the bad situation." Once she informed Walmart of her lifting restrictions, she was placed on unpaid leave.

Other pregnant workers echoed Lein's experience. Evelynn Welch informed Walmart of her pregnancy and "begged for light duty" because her regular duties were too much for her. Her boss denied her request, telling her that giving her light duty would be "favoritism." She continued working until she started bleeding and the fetal heart rate began to drop. She needed to save money for unpaid maternity leave, and she testified that going without an income "wasn't really an option." Even so, Welch eventually quit when she was unable to sustain her work at Walmart.

In September 2018, the EEOC filed this suit against Walmart on behalf of a class of pregnant workers at Distribution Center #6025 alleging that excluding pregnant women from the TAD Policy caused Walmart to violate workers' rights under Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act. See 42 U.S.C. §§ 2000e(k) & 2000e-2(a)(1). The district court denied Walmart's motion to dismiss, and the case moved to discovery. As we will see, discovery was hotly contested, particularly as a result of the EEOC's insistence that Walmart obtain workers' medical

records through the EEOC and not through non-party discovery requests directly to health-care providers.

The district court eventually dismissed the claims of two named complainants as a sanction for violations of the court's discovery orders. The district court also denied the EEOC's motion to compel Walmart to produce certain non-documentary evidence, including evidence about its eventual (and irrelevant under Rule 407) change in policy to start accommodating pregnant employees with light duty assignments. The parties filed cross-motions for summary judgment, and the court granted Walmart's motion.

The EEOC has appealed on the merits of its pregnancy discrimination theory, arguing that we should either reverse and direct the entry of judgment in its favor or order a trial. The EEOC also challenges the dismissal of two claimants as a discovery sanction and the denial of its motion to compel additional discovery about the TAD Policy.

II.  *Analysis*

We review de novo the district court's grant of summary judgment, giving the EEOC the benefit of conflicts in the evidence and drawing all reasonable inferences in its favor. *Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 759 (7th Cir. 2022). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We can affirm a grant of summary judgment on any ground supported by the record as long as it was adequately addressed in the district court and the losing party had an opportunity to contest it. *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018). We address first the merits of the EEOC's

pregnancy discrimination theory and then the discovery issues.

A. *Pregnancy Discrimination*

The EEOC argues that Walmart violated the Pregnancy Discrimination Act by not making light duty under the TAD Policy available to pregnant employees. Title VII makes it unlawful in relevant part for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). Congress passed the Pregnancy Discrimination Act in part to overrule the holding in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), which had held that discrimination because of pregnancy was not discrimination because of sex. *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 227–28 (2015); see also Pub. L. No. 95-555, 92 Stat. 2076 (1978). The Act also "illustrate[s] how discrimination against pregnancy is to be remedied." *Young*, 575 U.S. at 228, quoting *California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 285 (1987).

The Act accomplished these goals through two clauses that amended Title VII. The first declared that sex discrimination includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." § 2000e(k). The second provided that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes … as other persons not so affected but *similar in their ability or inability to work*." *Id.* (emphasis added).

A plaintiff can assert a claim of pregnancy discrimination under either a disparate-treatment or a disparate-impact

theory of liability. *Young*, 575 U.S. at 212–13. In this case, the EEOC seeks to use circumstantial evidence to prove disparate treatment in violation of the second clause of the Pregnancy Discrimination Act. The EEOC invokes the familiar three-step *McDonnell Douglas* burden-shifting framework, as adapted to pregnancy discrimination in *Young*. See *id.* at 229, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Ultimately the court must determine whether the nature of the employer's policy and the way in which it burdens pregnant women shows that the employer has engaged in *intentional* discrimination." *Id.* at 211 (emphasis added).

### 1. *Young v. UPS and its Steps*

The Supreme Court's most relevant guidance under the Pregnancy Discrimination Act came in *Young*, where the court vacated summary judgment in favor of the employer. 575 U.S. at 232. In doing so, it rejected both parties' interpretations of the Act and adopted its own. The employee in *Young* was a driver for UPS. UPS expected her to lift parcels weighing up to 70 pounds. After she became pregnant, Young's doctor told her not to lift more than 20 pounds and later in her pregnancy not more than 10 pounds. Young asked UPS for light duty, but UPS refused. Young went on leave during her pregnancy and lost her employee medical coverage. *Id.* at 211.

Young argued that UPS was discriminating against pregnant drivers because it accommodated other drivers who were not pregnant but were "similar in their … inability to work." *Id.*, citing 42 U.S.C. § 2000e(k). In its defense, UPS explained that it accommodated drivers who had become disabled through on-the-job injuries, as well as those who had lost federal Department of Transportation certifications, and those who had disabilities covered by the Americans with

Disabilities Act of 1990. *Id.* at 211–12. In rebuttal, Young also offered evidence that UPS had accommodated drivers who were injured off the job or whose disabilities stemmed from diseases, including cancer. *Id.* at 217. A union steward testified that the only light duty requests that UPS declined were from pregnant women. *Id.*

Young proposed a broad interpretation of the Act's second clause, which would find a violation if an employer accommodated any worker's physical limitations, regardless of reasons, and if it denied a similar accommodation to a similarly-limited pregnant employee. The Court rejected this position, which it described as "most-favored-nation" status for pregnant workers. *Id.* at 221–22.

The Court also rejected UPS's position and adopted instead a middle ground that governs our approach to this case. The Court adapted the burden-shifting framework of *McDonnell Douglas* to the Pregnancy Discrimination Act. First, "a plaintiff … may make out a prima facie case by showing, as in *McDonnell Douglas*, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Id.* at 229, quoting 42 U.S.C. § 2000e(k). The Court noted that the first-step burden is "not onerous." *Id.* at 228, quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff can make a prima facie case, the burden shifts to the employer to offer at step two a "legitimate, nondiscriminatory" justification for denying the accommodation. *Id.* at 229, quoting *McDonnell Douglas*, 411 U.S. at 802. The Court made clear that such justifications "normally cannot consist simply of a claim that it is more expensive or less convenient

to add pregnant women to the category of those ('similar in their ability or inability to work') whom the employer accommodates. After all, the employer in *Gilbert* could in all likelihood have made just such a claim." *Id.*

A plaintiff can overcome summary judgment at the third step by "providing sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden," "giv[ing] rise to an inference of intentional discrimination." *Id.* at 229. The employee can do this by offering evidence "that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." *Id*. at 229–30. Plaintiff Young satisfied that burden, requiring that summary judgment for UPS be vacated, by showing that UPS provided favorable treatment to "at least some employees whose situation cannot reasonably be distinguished from Young's." *Id.* at 231.

Young also offered evidence that several UPS policies for other categories of drivers worked together to accommodate lifting restrictions for most non-pregnant drivers but categorically refused to accommodate pregnant drivers. *Id*. at 230. The Supreme Court made clear that a reviewing court must consider the combined effects of an employer's policies and the strength of the justifications for each policy when combined. *Id.* at 231.

### 2. *Step Two in This Case*

Walmart concedes that the EEOC has satisfied step one of *Young* by showing that Walmart excluded pregnant employees from the TAD Policy, so we focus in turn on steps two and

three under *Young*. At step two, Walmart relies on reasons for its official TAD Policy to justify providing accommodations only to workers who were injured on the job. The TAD Policy describes its benefits as:

- Enhanced associate loyalty as providing TAD demonstrates a caring attitude and allows the associate to continue to be a contributing part of the facility team.

- Increased morale of the injured associate.

- Decreased associate recovery time, which allows the associate to remain productive.

- Lowered accident costs by reducing the payment of lost wages.

- Reduced legal exposure by allowing the associate to earn full wages.

Walmart added the following context through the declaration of John Murphy, the former human resource manager for the Walmart facility at issue here:

28. TAD reduces Walmart's costs overall because Walmart receives work from the associate with the occupational injury, and Walmart does not have to hire a different associate to do that work while the occupationally injured associate performs no work.

29. TAD reduces Walmart's legal exposure because the injured associate earns full wages, instead of the reduced wages under the worker's compensation system.

In sum, Walmart offers evidence that the purpose of the TAD Policy is to implement a worker's compensation program that benefits Walmart's employees while limiting the company's "legal exposure" and costs of hiring people to replace injured workers.

In *Legg v. Ulster County*, 820 F.3d 67 (2d Cir. 2016), the Second Circuit considered a similar policy by a county that accommodated with light duty correctional officers who had been injured on the job, but not others similarly limited for other reasons, including pregnancy. At step two of the *Young* analysis, the county explained that it offered corrections officers light duty only for occupational injuries, and not for pregnancy or other causes, because the state worker's compensation law required municipalities to pay officers injured on the job but did not require the same for officers unable to work for any other reasons, including pregnancy. *Legg*, 820 F.3d at 74–75. The Second Circuit accepted this justification from the county for step two, determining that "compliance with a state workers' compensation scheme is a neutral reason for providing benefits to employees injured on the job but not pregnant employees." *Id.* We agree.

Wisconsin's worker's compensation law gives workers injured on the job under certain conditions a right to an indemnity as wages. See Wis. Stat. § 102.43. The rate of this indemnity depends on the extent of any disability caused by the worker's on-the-job injury. See *id.* Employers are also liable for loss of earnings during any period of temporary disability. § 102.43(9). An employer can limit this latter liability by offering suitable employment—e.g., light duty under the TAD Policy—to an employee able to return to restricted work during the healing period. § 102.43(9)(a). Under the TAD Policy,

Walmart pays full wages while workers heal on light duty, rather than the reduced wages provided under the worker's compensation system if they were on leave.

Under this arrangement, Walmart says it seeks to comply with its obligations under Wisconsin law while it receives work from the healing employee and avoids the need to hire a replacement. Offering temporary light duty to workers injured on the job pursuant to a state worker's compensation law is a "legitimate, nondiscriminatory" justification for denying accommodations under the TAD Policy to everyone else, such as individuals not injured on the job, including pregnant women. See *Young*, 575 U.S. at 229, quoting *McDonnell Douglas*, 411 U.S. at 802; see also *Legg*, 820 F.3d at 75.

The EEOC argues here that the Pregnancy Discrimination Act, as interpreted by *Young,* imposes a heightened burden of production at step two—a burden that Walmart fails to meet. According to the EEOC, *Young* requires Walmart "to do more than simply articulate the reason why it provided a benefit to non-pregnant employees. The employer must also articulate *the reasons why it excluded pregnant employees* from the benefit." The EEOC claims that the text of the Pregnancy Discrimination Act supports this argument for a heightened burden at step two. We are not persuaded. The second clause of the Act clarifies that pregnant women must "be treated the same" as others "similar in their ability or inability to work," but it is a long stretch to say that this text requires a particular, heightened burden on employers in *Young*'s step two. 42 U.S.C. § 2000e(k).

To support this heightened burden theory, the EEOC points to two passages in *Young*:

> Ultimately the court must determine whether
> the nature of the employer's policy and the way
> in which it burdens pregnant women shows
> that the employer has engaged in intentional
> discrimination.
>
> …
>
> [W]hy, when the employer accommodated so
> many, could it not accommodate pregnant
> women as well?

*Young*, 575 U.S. at 211 & 231. These statements do not bear the weight that the EEOC seeks to place on them. To begin with, they do not address the burden at step two of the *Young* analysis. The first quotation refers to the need to focus the disparate-treatment inquiry on evidence of intentional discrimination. *Id.* at 211. The second quotation is a fact-focused rhetorical question. In *Young*, the employer's multiple policies combined to accommodate most non-pregnant workers, and that point was addressed at the third step of the inquiry, not the second. *Id.* at 231. Neither quotation supports a heightened burden of production for employers at step two. Walmart met its burden at step two by offering a legitimate reason for the TAD Policy's limits that was not discriminatory. From Walmart's standpoint, it had chosen for sound reasons to offer a benefit to a certain category of workers, those injured on the job, without intending to discriminate against anyone else with physical limitations, whether caused by off-the-job injuries, illness, pregnancy, or anything else, to whom its reasons did not apply.

### 3. *Step Three in This Case*

At step three, the burden shifts back to the EEOC to "provid[e] sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather—when considered along with the burden imposed—give rise to an inference of intentional discrimination." 575 U.S. at 229, quoting *McDonnell Douglas*, 411 U.S. at 802. Here, the differences between Walmart's TAD Policy and the employer's multiple policies in *Young* defeat the EEOC's theory of discrimination.

The Court vacated summary judgment for UPS in *Young* because it provided accommodations under multiple policies to several other groups of workers with lifting restrictions who were similar to Young in their ability or inability to work. *Id.* at 230. Like Walmart here, UPS accommodated occupationally injured workers unable to perform their normal work assignments. Unlike Walmart, though, UPS also provided light-duty assignments to accommodate drivers who lost necessary certifications due to a failed medical examination, involvement in an accident, or a lost driver's license. *Id.* at 215. Young also offered evidence of specific other employees accommodated by UPS, including some accommodated with light duty to cope with lost certifications and injuries that did not occur on the job. *Id.* at 216–17. In short, UPS seemed to accommodate lifting restrictions resulting from every condition except pregnancy. In this case, however, the EEOC has not offered evidence of comparators who were similar to pregnant women in their ability or inability to work and who benefited from light duty, other than workers injured on the job.

In *Young*, the Supreme Court noted that a "plaintiff can create a genuine issue of material fact as to whether a significant burden exists by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers." 575 U.S. at 229–30. The EEOC argues that it can satisfy this significant burden test because under the TAD Policy Walmart denied light duty to 100 percent of pregnant workers and granted light duty to 100 percent of occupationally injured workers. The argument is circular, however, and effectively asks the court to adopt the "most-favored-nation" status for pregnant employees that the Supreme Court rejected in *Young*. *Id.* at 222.

The EEOC cannot satisfy its burden at step three of the *Young* analysis by pointing to numbers showing only that Walmart actually implements its TAD Policy consistently with the justification for the policy that is legitimate and non-discriminatory. *Young* did not adopt a specific numerical threshold or ratio for non-pregnant workers accommodated and pregnant workers not accommodated to support an inference of pregnancy discrimination. But the facts of *Young* tell us what was sufficient there, and the evidence here does not approach that showing.

The closest the EEOC came to showing accommodation of similarly situated workers outside the TAD Policy for on-the-job injuries was to offer evidence in the district court that one complainant-employee was accommodated with a reduced schedule when she was not pregnant but was denied a similar accommodation when she was pregnant. A Walmart human resources clerk testified that the company approved Stephanie Kohls' request to reduce her schedule to attend school.

Kohls testified, though, that when she was pregnant, her doctor gave her a restriction that limited her to an eight-hour workday. Walmart never accommodated this restriction and required Kohls to take leave during her pregnancy.

If developed further, and perhaps as applied to a number of other employees who were neither pregnant nor injured on the job, this type of evidence could show a "significant burden" on pregnant workers and undermine Walmart's stated justifications for limiting access to the TAD Policy. See *Young*, 575 U.S. at 229–30. The EEOC has abandoned this argument on appeal, however, and it is waived. *Miller v. Chicago Transit Authority*, 20 F.4th 1148, 1155 (7th Cir. 2021) ("arguments not raised in an opening brief are waived"), quoting *Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020). The EEOC has not presented other evidence suggesting that workers similar to pregnant women in their ability or inability to work are accommodated under any employer policies barred to pregnant women, including the TAD Policy, other than the occupationally injured workers themselves.

We arrive at a different conclusion at step three than the Second Circuit did in *Legg v. Ulster County*, a similar but distinguishable case. See 820 F.3d at 75. Recall that *Legg* involved corrections officers who brought a claim of pregnancy discrimination against their county employer. The county offered light duty to workers injured on the job but not to its sole pregnant employee. Like Walmart here, the county tried to justify the policy based on the state's worker's compensation law. The court reversed judgment as a matter of law for the county for two reasons. First, and distinguishing *Legg* from this case, the employer in *Legg* had offered inconsistent and confusing rationales for its policy to accommodate those

injured on the job but not other employees. There is no similar evidence here. Second, the court found that the burden on pregnant employees could be deemed significant enough to outweigh the county's justifications at step three of the *Young* framework. *Id.* at 75–76. The Second Circuit left that choice to the jury.

Without the evidence of confused and inconsistent rationales, the result in *Legg* would, in our view, be difficult to reconcile with *Young*'s rejection of the "most-favored-nation" theory of pregnancy discrimination. 575 U.S. at 222. But again, we have no such evidence of confused and inconsistent explanations here, so we find *Legg* distinguishable in any event. The district court properly granted summary judgment on the merits of the pregnancy discrimination claim.

B.  *Discovery Sanctions*

The EEOC also argues that the district court improperly dismissed two claimants as a discovery sanction. We review for abuse of discretion the dismissal of a claimant's case as a discovery sanction. *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). "Of all possible sanctions, dismissal is considered draconian, and we must be vigilant in our review." *Maynard v. Nygren*, 372 F.3d 890, 892 (7th Cir. 2004) (internal quotations and citation omitted). Under the abuse of discretion standard, we uphold any reasonable discovery sanction fashioned by the district court, even if we might have made a different choice. *Wine & Canvas Development, LLC v. Muylle*, 868 F.3d 534, 539 (7th Cir. 2017). A party challenging a choice of sanction must show that no reasonable person would agree that the sanction was appropriate. *Id.* "Factors relevant to the decision to dismiss include the plaintiff's pattern of and personal responsibility for violating orders, the prejudice to others

from that noncompliance, the possible efficacy of lesser sanctions, and any demonstrated merit to the suit." *Pendell v. City of Peoria*, 799 F.3d 916, 917 (7th Cir. 2015).

The dismissal sanction here was imposed under Federal Rule of Civil Procedure 37. Dismissal under Rule 37 must be supported by fault, as shown by "extraordinarily poor judgment" or "gross negligence," rather than mere mistake or inadvertence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016), quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). The district court dismissed claimants Shannon Sonnentag and Leah Hayworth after it "warned plaintiff more than once that claimants would be struck if plaintiff did not produce the claimants' records in a timely manner."

To explain, discovery for this litigation was slowed by the EEOC's relatively late introduction of new claimants and the agency's insistence on retaining control over the production of medical records. The EEOC was still adding claimants approximately a month prior to the original deadline for dispositive motions. When Walmart served subpoenas on the nonparty health-care providers of twelve claimants, the EEOC moved to quash the subpoenas as broad and unnecessarily invasive of private medical information. Instead, the EEOC sought to manage production of medical records so that it could redact or withhold irrelevant information.

In early February 2020, the magistrate judge overseeing discovery asked the EEOC to confirm whether it was "willing to answer on behalf of each claimant for all discovery demands." The EEOC responded:

> [EEOC]: Yes. We accept all discovery demands through written discovery for the claimants—
>
> The Court: Okay.
>
> [EEOC]:—and respond on behalf of each claimant, and the same with deposition notices. We produce claimants for deposition pursuant to deposition notices …. *to the extent there's difficulty with our ability to do that, we drop claimants.*

(Emphasis added.) Later in the hearing, the magistrate judge warned the parties about the consequences of violating the court's discovery orders:

> *We are now entering Rule 37(b) territory* …. [I]f the EEOC was not forthcoming and timely in providing all information it was required to provide about a claimant prior to that claimant's deposition, *I predict the judge would grant a motion to strike that claimant from the lawsuit* …. [W]hen this call is over and when I have given a final order to the EEOC about what it must provide and when, the Court expects the EEOC to follow it, and I'm confident that [counsel for the EEOC] will commit to that. *But if something happens and the Court finds fault, there will be severe consequences.*

(Emphases added.) The magistrate judge then reiterated that the EEOC would be responsible for ensuring the claimants' availability for deposition and providing relevant documents 30 days before each deposition.

The EEOC was not able to keep to these deadlines, and the court repeatedly warned the EEOC of potential consequences,

including dismissal, for continued failure to comply with discovery orders. In late February, the court clarified that if Walmart's fears about discovery issues were justified, "then it is likely that the court will strike from this lawsuit any proposed claimant for whom the EEOC does not timely provide the required information and schedule for a timely deposition." In a discovery conference on March 2, the magistrate judge repeated the warning: "Judge Crabb is fine with striking claimants, that from the judge's perspective, she has already accommodated the EEOC by pushing these deadlines out so that things could happen." The discovery dispute continued however, and on March 5, Walmart moved to strike nine claimants.

The district court found on March 27 that the EEOC had "violate[d] court-ordered discovery production deadlines," but at that time, the court refused to "find that the specific circumstances present in this case warrant the striking of nine claimants." On April 8, 2020, the court imposed a new deadline of August 31 for depositions, with production of each claimant's medical records due 30 days before her deposition.

The district court's initial and measured responses to the EEOC's failures were well within its discretion, as were the repeated and clear warnings that it would not indulge further delays. *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191–92 (7th Cir. 2011) (affirming dismissal of plaintiffs' claims for repeatedly missing discovery deadlines); *Securities & Exchange Commission v. Homa*, 514 F.3d 661, 678 (7th Cir. 2008) (affirming grant of default judgment for repeated refusals to comply with discovery orders). The district court's orders were quite specific, and the EEOC failed to comply. Cf. *Evans v. Griffin*, 932 F.3d 1043, 1046–47 (7th Cir. 2019) (reversing sanction of

dismissal under Rule 37(b) for failure to comply with discovery orders; court order "did not direct either party to engage in any specific course of discovery").

But then the EEOC failed to provide certain medical records 30 days prior to the depositions of Sonnentag and Hayworth in August 2020. At that point, the district court imposed the sanction of dismissal for those two claimants, though not the entire case.

The EEOC argues that the district court failed to justify the dismissals with a sufficient finding of culpability. The EEOC says that its discovery violations were inadvertent and resulted in no prejudice to Walmart. We see things differently. The district court did not dismiss these two claimants for one inadvertent mistake. The court had repeatedly tolerated discovery delays by the EEOC while warning the EEOC that its patience was not infinite, and it had given ample warning that claimants might be dismissed if the EEOC continued to miss court-ordered deadlines.

This sanction was imposed within the boundaries of the court's powers under Rule 37(b)(2)(A) for the EEOC's failure to obey discovery orders. See *Ramirez*, 845 F.3d at 776. District courts must be able to enforce deadlines to effectively manage their docket. *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015). The dismissal of Sonnentag and Hayworth was strong medicine but reasonable under the circumstances. Having granted the EEOC's request to control the production of claimants' medical records, having seen the EEOC fail to meet its obligations more than once, and having given the EEOC a further chance to comply but with a warning, the district court acted well within its discretion in dismissing the two claimants. See *Donelson*, 931 F.3d at 570 (affirming dismissal after

warnings to plaintiff to stop obstructing discovery proved in-effective); *Wine & Canvas Development*, 868 F.3d at 539 (affirm-ing monetary sanctions against plaintiff for missing discovery deadline by one day); see also *Pendell*, 799 F.3d at 917 (affirm-ing dismissal under Rule 37(d) after plaintiff repeatedly failed to appear for her deposition: "a court may dismiss a suit after the plaintiff has willfully refused to comply with discovery orders and the plaintiff has been warned that noncompliance may lead to dismissal"); *Domanus v. Lewicki*, 742 F.3d 290, 300, 302 (7th Cir. 2014) (affirming grant of default judgment against defendants for discovery abuses, including delay); *Salgado v. General Motors Corp.*, 150 F.3d 735, 741–43 (7th Cir. 1998) (affirming grant of summary judgment; when plaintiff missed extended discovery deadline, despite court's warning, district court excluded plaintiff's expert witness, leaving plaintiff with no case).

C.  *Denial of Motion to Compel Discovery*

Finally, the EEOC argues that the district court abused its discretion in denying its motion to compel discovery of non-documentary evidence about the TAD Policy. District courts have broad discretion in discovery-related matters, and we re-view the denial of a motion to compel for abuse of discretion. See *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015). "We will only reverse a district court's ruling after a clear showing that the denial of discovery resulted in actual and substantial prejudice." *Id.*

First, the district court did not deny the EEOC's motion to compel in full. The EEOC had sought information about par-ticular Walmart decision-makers involved in the TAD Policy, related training, and why the policy was later changed to in-clude pregnant women. The magistrate judge's order said:

> Therefore, the EEOC may discover Walmart's written policies on breastfeeding, lactation, and school-related schedule adjustments that were in effect at the time alleged in the EEOC's complaint. The EEOC also may discover any nonprivileged documents that explain why Walmart changed its TAD policy. But that's it: *production is limited to the documents*. This will give the EEOC the information most relevant to its concerns without unduly burdening Walmart or its policy makers.

(Emphasis added.) The magistrate judge denied other discovery "both on relevance grounds and pursuant to Fed. R. Evid. 407."

The district court later overruled the EEOC's objections to the magistrate judge's discovery order, reasoning that the EEOC had not alleged a lack of training or specific actions by policymakers that would justify the additional information requested. On appeal, the EEOC argues that the district court's discovery limitations stem from the court's misapplication of *Young* and its errors in interpreting the second clause of the Pregnancy Discrimination Act. The EEOC claims that suits under the second clause permit broader discovery to learn "whether the employer explained why it excluded pregnant employees from a benefit." We do not agree. As explained above, this language in *Young* does not create a heightened burden and does not justify limitless non-documentary discovery, especially when the evidence appears likely to be irrelevant and inadmissible under Fed. R. Evid. 407.

The EEOC also fails to show real and substantial prejudice from the denial of additional discovery. See *Gonzalez*, 791 F.3d at 713. Given that lack of prejudice and the district court's broad discretion as to the scope of discovery, we find no abuse of discretion here.

The judgment of the district court is

AFFIRMED.