NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2021
Decided March 23, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1247

| | |
|---|---|
| VINCENT FOGGEY,<br>　　*Plaintiff-Appellant,*<br><br>　　*v.*<br><br>CITY OF CHICAGO,<br>　　*Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 16 CV 10963<br><br>Manish S. Shah,<br>*Judge.* |

**O R D E R**

When Chicago police officer Vincent Foggey received a call for help from his rookie partner, he was slow to respond and effectively watched his partner struggle to arrest someone on the ground. After investigating the incident, the City of Chicago fired Foggey for violating several department rules, including failing to assist his partner. Foggey, who is an African American male, sued the City for race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964. The district court ultimately entered summary judgment for the City. Because no reasonable jury could conclude that Foggey was fired based on his race or gender, rather than his failure to assist an inexperienced partner, we affirm.

In 2014, Vincent Foggey, a decorated eight-year veteran of the Chicago Police Department, went inside a Walgreens for what was supposed to be a 15-minute break. His partner, Sanjin Hozkic, remained behind in the parking lot. About 40 minutes later, Hodzic radioed for assistance. Hodzic, who is white, had been a fully certified police officer for only a few days. Foggey left the drugstore and ambled across the parking lot, where he saw that Hodzic had pushed a man up against the police car. Foggey watched as Hodzic performed what Foggey called an "emergency take down," slamming the man to the ground and straddling him.

Without picking up his pace, Foggey approached the scene. He saw Hodzic atop the man, who was face down and resisting. Foggey leaned down and told the man to put his hands behind his back. In Foggey's telling, he "grabbed" the man to help subdue him. (In Foggey's statement to the police department's disciplinary board, however, he reported having no physical contact with the man. A recording of the event, taken from one of Walgreen's security cameras, does not resolve whether Foggey grabbed or tried to physically control the man on the ground.) Hodzic eventually cuffed the man, and Foggey then searched him, finding a knife. During the scuffle, Foggey learned later, the man had bitten Hodzic and lunged for his weapon. According to another officer who arrived on the scene, Foggey remarked that new officers are "always getting involved in something." Foggey does not recall making that statement.

A video of the incident was reviewed by a superior officer, who, convinced that Foggey did not adequately support his partner, initiated a complaint against him for dereliction of duty. Upon receiving the complaint, the Department's Board of Internal Affairs investigated the events and recommended finding that Foggey had committed misconduct warranting discharge. The case then proceeded to the Superintendent of Police and the Police Board, who reviewed the charges and suspended Foggey without pay pending a disciplinary hearing.

The Police Board proceeded with a hearing on the charges against Foggey. The Board ultimately determined that Foggey had failed to assist a novice partner, to communicate by radio with his partner or dispatcher about the event, and to use any physical tactic to control a dangerous situation. The Board also found that his critical remark about young officers showed a lack of accountability for the events. The Board concluded that Foggey had violated four of the Department's rules by: (1) disobeying a written order, (2) displaying incompetence or inefficiency, (3) failing to perform a duty, and (4) impeding the Department's efforts to achieve its policy and goals. The Police

Board voted unanimously to fire Foggey. The record reflects no previous disciplinary actions against Foggey.

After exhausting his remedies with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, Foggey sued the City of Chicago, alleging, as relevant here, that he was fired because of his race and gender, and in retaliation for his EEOC filings, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Further proceedings followed.

After the close of discovery, an evidentiary dispute arose between the parties. Foggey moved to compel, in relevant part, the production of documents (e.g., personnel files) regarding disciplinary actions taken against similarly situated white officers.

The district court denied the motion. First, the motion was untimely, as discovery had ended three weeks earlier. Second, any breakdown in discovery lay largely with Foggey, who had not responded to the City's objections, ignored the City's offer to discuss protocols for electronically stored information, and did not clarify what sort of officers he regarded as "similarly situated" for purposes of the documents sought. Finally, Foggey's "lax approach to the schedule" would not be "reward[ed]": In the court's view, Foggey waited until the end of discovery to launch overbroad requests to shift onto the defendant the time and effort of investigating the case, and then waited until after discovery closed to bring a motion to the court's attention.

The court eventually entered summary judgment for the City of Chicago. Applying the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court concluded that Foggey failed to establish a prima facie case of discrimination because he could not identify a similarly situated individual who was treated more favorably. Hodzic, the court explained, was not an appropriate comparator. He had only a few days of experience compared to Foggey's eight years. And, despite committing a similar rule violation (failing to describe over the radio why he needed support), his mistake did not endanger his partner, and he did not commit any other violations. Foggey, however, overstayed his break, delayed helping his inexperienced partner, and failed to use any physical technique to control the situation. Further, Foggey lacked evidence to raise an inference that the Police Board's rationale for firing him was pretextual. Even under the broader test in *Ortiz v. Werner Enterprises, Inc.*, 830 F.3d 760, 764 (7th Cir. 2016), Foggey failed to put forth evidence that the City discharged him because of racial or gender-based animus. As for Foggey's retaliation

claim, the court explained that he had not produced evidence from which a jury could conclude that the Board would not have fired him but for his EEOC filings.

On appeal, Foggey principally raises two challenges to the entry of summary judgment on his race discrimination claim. Invoking *McDonnell Douglas*, he first argues that the district court wrongly concluded that his partner Hodzic was not an appropriate comparator. Hodzic, Foggey counters, was not a rookie, having been with the Department for more than a year and a half, and Hodzic had flouted protocol when he radioed for help without describing his location or emergency. Yet Hodzic's violation triggered no discipline, let alone discharge—a fact from which, Foggey insists, a reasonable jury could conclude that the real reason he was fired was race.

The district court correctly found that Foggey and Hodzic were not similarly situated. Two individuals are similarly situated, and thus require equal treatment, if they are "directly comparable in all material respects." *See Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). As the district court explained, Hodzic was an inexperienced officer with only a few days of full responsibilities under his belt, who made a less-than-detailed radio call for help in the middle of a high-stress situation. Foggey, on the other hand, was an eight-year veteran who, in addition to breaking radio protocol, overstayed his break, lagged in response to his rookie partner's call for help, and failed to intervene to rein in a violent situation. As for Hodzic's year-and-a-half tenure, that characterization glosses over the nine months he spent at the academy and in training, two months ensuring students' safe arrivals and departures from school, and several months on probationary foot patrol.

The district court's second error, according to Foggey, was in failing to appreciate evidence of pretext. The City said that it fired him for failing to assist his partner, but Foggey insists that—as captured on video—he helped Hodzic corral the man, even directing him to put his hands behind his back.

But even if we assumed the City's reason for his discharge to be mistaken, a showing of pretext requires more—that the proffered reason was a deliberate lie. *See Robertson v. Dep't of Health Serv.*, 949 F.3d 371, 380 (7th Cir. 2020). Foggey made no such showing. The video shows that he slowly approached his partner, hovered over the scene, and extended one hand downward—it does not show that he touched the detained man or used any physical technique to control the situation. Indeed, Foggey told the Police Board that he did not physically touch the man until after the man had

been cuffed. On that record, no reasonable jury could conclude that the Board's proffered reason for firing Foggey was a lie.

Foggey also challenges the entry of summary judgment on his retaliation claim. He primarily argues that the timing of his discharge—three months after he filed charges of discrimination with the EEOC and Illinois Department of Human Rights—gives rise to an inference of retaliation.

That inference is not warranted. Suspicious timing by itself is rarely enough for a reasonable jury to infer retaliatory motive. *See Cung Hnin v. Toa (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014); s*ee also Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval between complaint and discharge insufficient). And even if the timing were sufficiently suspicious, Foggey's retaliation claim would fail for another reason: He did not present evidence that the defendants knew he had engaged in a protected activity. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021). As the City points out, Foggey presented no evidence that anyone on the Police Board—the body that terminated his employment—knew of any charges that he filed. The evidence he submitted for that purpose—a letter from the Illinois Department of Human Rights to the City's corporation counsel—does nothing to show that the Police Board's members, who are not represented by the City's law department, knew about his filings. (Though Foggey asserted at oral arguments that the City's law department does represent the Police Board, the summary-judgment record says otherwise.)

At oral arguments, Foggey also purported to challenge the district court's entry of summary judgment on his gender discrimination claim. But Foggey did not mention gender discrimination in his briefs or develop any argument about it on appeal; his challenge to the entry of summary judgment on his gender discrimination claim is thus waived. *Perez v. Illinois*, 488 F.3d 773, 776–77 (7th Cir. 2007). In any case, for the reasoned explained by the district court, no reasonable jury could find that the Police Board fired Foggey because he was male.

Finally, Foggey contests the district court's denial of his motion to compel discovery. He maintains that his actions were not dilatory, since he sought the personnel files three times before filing the motion to compel. And he disputes the court's characterization of his motion as untimely, since he filed it months before motions for summary judgment were due.

The district court did not abuse its discretion in denying the motion. In a thorough order, the court explained that Foggey's motion was three weeks late and unaccompanied by any good excuse—both proper considerations when weighing motions to compel. *See Gonzalez v. City of Milwaukee*, 791 F.3d 709, 714 (7th Cir. 2015). Even if the City did stonewall Foggey's efforts to access key personnel files, Foggey does not explain why he did not bring the problem to the court's attention sooner. Nor does he dispute the court's conclusion that the discovery problems were self-inflicted: He disregarded defendant's objections, rebuffed their overtures to develop protocols for electronically stored information, and failed to tailor the scope of his requests for information regarding similarly situated officers. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 (7th Cir. 2000) (no abuse of discretion in denying late motion to compel where plaintiff engaged in inefficient practices during discovery).

AFFIRMED