NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2022[*]
Decided June 13, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-1659

| | |
|---|---|
| JOHNNIE WOODS,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17 C 6828 |
| GHALIAH OBAISI, as Executor of the Estate of SALEH OBAISI, and MATTHEW RANZER,<br> *Defendants-Appellees*. | Gary Feinerman,<br> *Judge*. |

## O R D E R

Johnnie Woods, an Illinois prisoner, sued a prison doctor and a plastic surgeon affiliated with a state university under 42 U.S.C. § 1983 for violating his Eighth Amendment rights by allegedly mishandling a surgery that removed excess scar tissue on his heel. The district judge entered summary judgment for the defendants. He

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

correctly concluded that, based on the undisputed evidence, the prison doctor provided constitutionally adequate medical care for the foot and the surgeon was not a state actor, as is required for a claim under § 1983. Thus, we affirm.

We describe Woods's medical care based on the record, viewed in the light most favorable to Woods and in accordance with the district court's local rules. *See Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019); *see also* N.D. Ill. L.R. 56.l(b)(3)(C) (2020). After a previous injury unrelated to this appeal, Woods developed excessive scar tissue on the back of his left heel. Dr. Saleh Obaisi, the medical director of Woods's prison, observed the tissue on Woods's heel. (After Dr. Obaisi's death, the judge substituted the executor of Dr. Obaisi's estate as defendant. FED. R. CIV. P. 25(a)(1)). Dr. Obaisi referred Woods to an outside plastic surgeon, Dr. Matthew Ranzer. Dr. Ranzer recommended surgery to remove the scar tissue and transfer adjacent tissue. Woods received this surgery. When he returned to the prison, Dr. Obaisi admitted him to the infirmary, where medical staff saw Woods every three hours.

At a follow-up appointment with Dr. Ranzer, Woods learned that the wound had not closed, his heel bone was exposed, and he needed another surgery. Dr. Ranzer dressed the wound with compression bandages and wrote treatment instructions for the prison's staff, in which he advised them to "leave dressing alone."

A few days later, Woods met with Dr. Obaisi and told the doctor that his heel bone was exposed. To inspect the heel, Dr. Obaisi had a nurse remove the compression bandages, which were contraband. Woods responded that Dr. Ranzer had said to leave the dressing alone. After Dr. Obaisi's inspection, the nurse re-dressed the wound with gauze and tape. Dr. Obaisi ordered Woods to keep the gauze and tape intact, and, at a follow-up appointment one week later, prescribed medicine to resolve any pain. Days later Woods took a shower, removed the dressing, and asked a nurse to replace it. The nurse replaced the dressing but reminded Woods that, according to Dr. Obaisi, he should leave the dressing alone and wash himself with the sink instead of the shower. Woods insisted on using a shower anyway. He also refused the offer of pain relievers.

Woods wanted different treatment from what he received after the first surgery. After Woods learned of the exposed heel bone, he sought (but did not receive) a second opinion about his heel or a different surgeon for the upcoming surgery. And after the nurse removed the compression bandages, he filed a grievance, complaining of pain and swelling and asking to have the compression bandages returned. A counselor responded that, according to Dr. Obaisi, Woods "should, or usually would," receive his own "Kling" bandage (a conforming gauze bandage). Woods says that he never

received it. At a follow-up visit, Dr. Ranzer prescribed a "Kerlix" wrap (another conforming gauze bandage) after Woods complained of pain and swelling. Woods received that roll several weeks later.

Woods returned to Dr. Ranzer for the second surgery. Before the surgery, he consented to having Dr. Ranzer use a "reverse sural artery flap" to close the wound in his heel. In this procedure, the surgeon uses adjacent tissue, instead of donor skin from another part of the body, to close the heel. On the day of the surgery, however, Dr. Ranzer used a skin graft, a procedure to which Woods says he did not consent.

Obaisi provided further care to Woods after he returned from the second surgery. Among other things, Obaisi issued Woods a slow-walk permit, a medical lay-in (permitting Woods to eat in his cell instead of walking to the dining area for food), and a splint for his foot. The skin graft healed well. Woods occasionally complained of numbness in his foot, and Dr. Obaisi referred Woods to Dr. Ranzer for a follow-up assessment. Woods declined any further corrective surgery.

Woods sued Dr. Obaisi and Dr. Ranzer under 42 U.S.C. § 1983 for deliberate indifference in the treatment of his heel. (He also sued other defendants, but he excluded some of them after he amended his complaint. Others were dismissed at screening, *see* 28 U.S.C. § 1915A. Woods does not challenge their absence.) As mentioned earlier, the judge entered summary judgment for the defendants. He concluded that Woods produced no evidence that would convince a reasonable jury that Dr. Obaisi's treatment fell below minimal constitutional standards. He also ruled that no evidence supported Woods's allegation that Dr. Ranzer was a state actor within the coverage of § 1983.

On appeal, Woods maintains that the record supports his claim that Dr. Obaisi provided deliberately indifferent care. First, he contends that Dr. Obaisi "knew of and disregarded a substantial risk of harm," *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc), because Woods complained to Dr. Obaisi about Dr. Ranzer, yet Dr. Obaisi refused to authorize a second opinion. As a result, Woods argues, he was injured at his second surgery by receiving a procedure to which he did not consent.

The Eighth Amendment protects inmates like Woods from "grossly inadequate medical care," *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014), but it does not entitle inmates to particular care of their choosing, *see Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Woods, we accept, wanted a different surgeon. But he has not submitted medical evidence that the result of the first surgery—a wound at the surgical

site that for unknown reasons did not close properly—arose from such obvious surgical incompetence that "no minimally competent medical professional" would have referred Woods back to the original surgeon, as Dr. Obaisi did. *Pyles*, 771 F.3d at 409 (internal quotations omitted). Woods replies that, at the second surgery, Dr. Ranzer used a procedure to which he did not consent. But Woods does not tell us why Dr. Obaisi had reason to anticipate this event. Thus, the district judge rightly rejected the claim that Dr. Obaisi's referral to Dr. Ranzer for the second surgery showed deliberate indifference.

Next, Woods argues unpersuasively that he raised a triable claim that Dr. Obaisi deliberately ignored a serious medical need by removing the compression bandages against Dr. Ranzer's advice. We assume that Dr. Ranzer had a reason for using those bandages. But the record shows that Dr. Obaisi provided reasonable alternative care. When Woods complained about the first surgery, Dr. Obaisi removed the bandages to see the problem, had the wound re-dressed with gauze and tape, told Woods to leave the dressing alone, and prescribed pain medicine. Though Woods wanted compression bandages, and he did not quickly receive his own roll of conforming gauze bandages, no medical evidence suggests that the gauze taped to his wound, coupled with pain medicine, orders to leave the gauze intact, and replacement of it after he showered, reflects incompetence. Woods contends that Dr. Obaisi's treatment was insufficient because he experienced pain and swelling, but he also admitted that he refused to follow Dr. Obaisi's orders on how to care for his heel: against medical advice, he removed the gauze dressing when showering, and he refused pain relievers. Finally, the totality of care that Dr. Obaisi provided also refutes an inference of deliberate indifference. *Lockett*, 937 F.3d at 1023. After the first surgery, Dr. Obaisi admitted Woods to the infirmary where he received care every three hours, and after the second surgery he granted Woods lifestyle modifications, such as a medical lay-in and a splint.

Finally, Woods challenges the entry of summary judgment in Dr. Ranzer's favor based on the absence of evidence of state action. He argues that he asked the defendants to provide the contract (if one exists) between Dr. Ranzer and the prison's medical services provider and speculates that it would have shown that Dr. Ranzer acted "under color of state law," an element of a claim under § 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014). But an unfulfilled discovery request is not a basis for disturbing summary judgment. If Woods believed, as he does, that such a contract exists and is necessary to prove state action but that the defendants wrongly withheld it, then he needed to move to compel discovery of it in the district court and, if the district judge denied the motion, contest that ruling on appeal. *See, e.g., Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015). But because Woods did not move to

compel the defendants to produce the contract, we have no ruling to review. And he may not raise the issue for the first time on appeal. *See Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1018 (7th Cir. 2020).

AFFIRMED